Winnie C. BYERS, Appellant,

v.

William A. BURLESON.

No. 82–2126.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 21, 1983.

Decided Aug. 5, 1983.

As Amended Aug. 5, 1983.

Charles C. Parsons, Washington, D.C., for appellant.

David B. Wilkins, Washington, D.C., of the Bar of the District of Columbia, pro hac vice, by special leave of the Court, with whom David N. Webster and Earl C. Dudley, Jr., Washington, D.C., were on the brief, for appellee.

Before WALD and SCALIA, Circuit

Judges, and FRIEDMAN,* Circuit Judge, United States Court of Appeals for the Federal Circuit.

WALD, Circuit Judge:

Appellant Winnie C. Byers seeks relief from a decision of the district court granting summary judgment to appellee William A. Burleson and dismissing her complaint against Burleson for legal malpractice. The court granted summary judgment on the ground that the statute of limitations had run on Byers' claim. Because we conclude that there is a genuine issue of material fact as to when Byers knew or should have known of Burleson's alleged malpractice so as to start the running of the statutory period, we reverse the district court's grant of summary judgment and remand the case for further proceedings.

## I. BACKGROUND

On June 12, 1975, Dr. Bahman Teimourian performed breast reduction surgery on Byers at Greater Southeast Community Hospital (Greater Southeast) in Washington, D.C. Following her surgery, Byers developed an abscess in her left breast. She therefore sought treatment on several occasions at the Malcolm Grow Hospital (Malcolm Grow) at Andrews Air Force Base in Camp Springs, Maryland. On July 17, the abscess was incised and drained and the wound packed with gauze. On September 19, Byers underwent surgery at Malcolm Grow. During the surgery, a foreign body (described by Burleson as a sponge) was discovered and removed from her left breast.

On May 18, 1978, Burleson filed suit on behalf of Byers against Teimourian and Greater Southeast in the Superior Court of the District of Columbia, alleging medical malpractice by the two defendants and stat-

ing that Teimourian had "admitted that he had made a mistake in his operation and treatment of plaintiff [Byers] . . . ." Appellant's Appendix (App.) at 183–84. He did not file suit against Malcolm Grow or any of its employees.[1]

In May 1978, Byers fired Burleson. He received her letter of discharge on May 27. In June, Byers retained Charles Parson, her present attorney, to pursue her claim of medical malpractice. On August 4, Parsons filed a motion in the medical malpractice suit Burleson had filed in Superior Court for the District of Columbia, seeking an order to compel Burleson to release Byers' case file. On August 11, before the court could act on this motion, Burleson turned over the file.

The file contained the pleadings in the action filed by Burleson against Teimourian and Greater Southeast, including Teimourian's answer; Burleson's correspondence with Greater Southeast and the Hartford Insurance Co.; Byers' medical records; and pictures of Byers. In addition, in a cover memorandum attached to the file, Burleson stated that Greater Southeast had sought to conceal an "Operative Data" report compiled by the operating room nurses which reflected that the nurses had negligently failed to carry out a sponge, tape, or gauze count after Byers' surgery. The memorandum also stated that the hospital had similarly removed the "operating procedure" on Byers from its records, but that Burleson had somehow been able to obtain the "procedure," which showed that tapes, bandages, and strips were used in the operation. Burleson concluded the memorandum: "This case has been won for you, only I could have obtained the above two records." App. at 204.

On August 11, Parsons notified the Superior Court that Burleson had released the file and that he was withdrawing his motion to compel its release. Three days later, Burleson filed a claim for an attorney's lien against any judgment in Byers' lawsuit.

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. By May 1978, the statute of limitations would no doubt have barred such a suit. Since Malcolm Grow is a federal institution, malpractice suits against it are governed by the two-year limitations period of the Federal Tort Claims Act, 28 U.S.C. § 2401(b).

On September 25, Parsons served forty-two written interrogatories on Teimourian. In two of the interrogatories Parsons sought to explore the basis for an affirmative defense Teimourian had raised in his answer to the original complaint, which stated: "This defendant avers that if any foreign object was in plaintiff's breast as alleged, it was placed there by persons who are not parties to this litigation." Brief for Appellee at 7 n. 3; Brief for Appellant at 10.

Teimourian served Parsons with his answers to these interrogatories on November 2. In response to interrogatories 40 and 41(e), Teimourian stated:

40 A. On an operation of this magnitude an instrument and sponge count is routinely done by the circulating nurse. If an instrument or sponge is missing this is reported to the surgeon and an xray of the operative site is obtained. In this case no sponges were used. I was told that the instrument and tape counts were correct as I am told in every case by the circulating nurse. The count is done at the time of closure. If the count is incorrect the surgeon is told and an xray is obtained to identify the object and its location. I have not used any sponges on reduction mammoplasty since I have been in practice. I insist that the circulating nurse communicate to me the accuracy of the needle, blade, instrument and tape count; and sponge count if they are used in a certain procedure.

41(e). Not applicable. I understand that there was surgery at Andrews Air Force Base Clinic to remove some foreign material which was apparently packing, at some later period of time. This information can be obtained from the Air Force records.

See App. at 133.[2]

Five months later, on April 9, 1979, Parsons deposed Teimourian to determine what evidence existed to demonstrate that the sponge removed from Byers' breast had not been left there during her hospitalization at Greater Southeast. Teimourian reiterated at the deposition that he does not use sponges in mammoplasty operations and produced X-rays that showed that sponges could not have been left in Byers' body until after she began receiving treatment at Malcolm Grow.

Parsons deposed Burleson on May 7, 1979, to discover why he had concluded that Teimourian and Greater Southeast were responsible for the foreign body in Byers' breast. Burleson gave several reasons, including (1) that Byers' hospital chart at Greater Southeast indicated she had an elevated temperature at the time of her release, demonstrating that she had an infection caused by the presence of a foreign body; (2) that the "Operative Data" sheet from Greater Southeast confirmed that no sponge count was done during Byers' surgery; (3) that Teimourian had admitted fault to Dr. Schwamm, a pathologist at Malcolm Grow; (4) that Dr. Thomas Williams, a dermatologist at D.C. General Hospital, would testify that Teimourian's negligence during Byers' surgery caused her post-surgical problems; (5) that another doctor had referred to Teimourian as a "butcher"; and (6) that Teimourian's insurance company had evaluated Byers' case at a substantial figure.

On November 9, 1979, Byers sued Burleson in Superior Court for legal malpractice for allowing the statute of limitations to run on her claim against Malcolm Grow, and on November 16 moved to consolidate the case with her medical malpractice action against Teimourian and Greater Southeast. The motion was denied.

Shortly thereafter, Teimourian and Greater Southeast moved for, and on July 17, 1980 received, summary judgment in the medical malpractice action. Byers did not appeal this decision.

**2.** On May 7, 1982, the parties to this case stipulated that the discovery undertaken in the two cases filed in the Superior Court for the District of Columbia, *Byers v. Teimourian,* Civ. No. 5139–78, and *Byers v. Burleson,* Civ. No. 14408–79, could be used in this case to the extent they were usable in No. 14408–79. We therefore quote here from the answers to interrogatories filed in No. 5139–78, on October 3, 1978.

On November 2, 1981, the Superior Court dismissed one of the counts in the legal malpractice action against Burleson. On November 9, Byers moved to dismiss her case against Burleson without prejudice. The next day, November 10, Byers filed this case against Burleson in the district court. November 10 was three years and a week after Teimourian served his answers to interrogatories on Parsons.

On May 7, 1982, Burleson moved for summary judgment on the ground, *inter alia,* that all three counts of the new complaint were barred by the District of Columbia's three-year statute of limitations for malpractice actions. The district court granted summary judgment in favor of Burleson on August 20, 1982, holding that Parsons should have been alerted to the possibility that the foreign body was left in Byers' breast by someone at Malcolm Grow as early as August 11, 1978, when he received Byers' case file containing Teimourian's answer asserting that a third party had left the foreign matter in her breast, or at the very latest by November 2, 1978, when Teimourian served his interrogatory answers on Parsons swearing he had not used any sponges in the surgery.[3] Since both of these events occurred over three years before Parsons filed suit in district court against Burleson, the court concluded that the complaint was time-barred and should be dismissed with prejudice. This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

■ Under Fed.R.Civ.P. 56(c), summary judgment is proper only where there is no genuine issue of material fact and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law. *E.P. Hinkel & Co. v. Manhattan Co.,* 506 F.2d 201, 204 (D.C.Cir.1974); *Davidson v. Coyne,* 347 F.2d 471, 472 (D.C.Cir.1965). Our role in reviewing the grant of summary judgment is to determine whether there is any genuine issue of material fact underlying the adjudication and, if not, whether the substantive law was correctly applied. *Bloomgarden v. Coyer,* 479 F.2d 201, 206–07 (D.C.Cir. 1973).

■ Legal malpractice claims in the District of Columbia "may not be brought" more than three years "from the time the right to maintain the action accrues." D.C. Code § 12–301. *See Fort Myers Seafood Packers, Inc. v. Steptoe & Johnson,* 381 F.2d 261, 262 (D.C.Cir.1967), *cert. denied,* 390 U.S. 946, 88 S.Ct. 1033, 19 L.Ed.2d 1135 (1968); *Weisberg v. Williams, Connolly & Califano,* 390 A.2d 992, 994 (D.C.App.1978). To determine if summary judgment was proper in this case, we must first determine the District of Columbia rule for ascertaining the time when the plaintiff-client's cause of action for legal malpractice "accrues."[4]

### B. *The Test for Determining When the Statute of Limitations Began to Run*

■ In determining when a legal malpractice claim "accrues," the District of Columbia follows the so-called "injury" rule.[5] Under this rule, a claim for legal mal-

---

**3.** We note that the date on which Teimourian *served* these answers on Parsons (November 2) is not necessarily the date on which Parsons *received* them. We accept as reasonable Parsons' statement on appeal that he received them on November 5. We also note that the district court at one point mistakenly refers to November 2 as the date on which Parsons *deposed* Teimourian, rather than the date on which Teimourian served his answers to interrogatories.

**4.** The sole basis of jurisdiction in the district court for Byers' legal malpractice claim was diversity of citizenship, 28 U.S.C. § 1332. In diversity cases, the federal courts in this jurisdiction look to "the District of Columbia's courts to provide the applicable choice of law principles and substantive rules of decision." *Lee v. Flintkote Co.,* 593 F.2d 1275, 1278 n. 14 (D.C.Cir.1979). Thus, the district court correctly applied District of Columbia law to determine whether the statute of limitations bars Byers' claim.

**5.** For more detailed discussions of the injury rule and other rules developed to determine the time of accrual of the plaintiff-client's cause of

practice accrues when the plaintiff-client suffers *actual* injury, *not* when the act causing the injury occurs. *See Hunt v. Bittman,* 482 F.Supp. 1017, 1020 (D.D.C. 1980); *Weisberg v. Williams, Connolly & Califano,* 390 A.2d at 995.

■ Furthermore, where a legal or medical injury is not readily apparent, the District of Columbia courts follow the "discovery" rule, which tolls the running of the statute of limitations until the plaintiff-client discovers or reasonably should have discovered her injury.[6] In *Weisberg v. Williams, Connolly & Califano,* the District of Columbia Court of Appeals faced the precise issue involved in this case—*i.e.,* when the statute of limitations begins to run on a malpractice action against an attorney who has failed to file a timely claim on behalf of his client. While it concluded that it "need not, and [could] not, pinpoint the precise moment when in all cases the cause of action for legal malpractice based on negligently allowing the statute of limitations to run on a client's claim accrues," the court determined that in the case before it the statute had indeed run because appellants had suffered injury more than three years prior to filing suit. 390 A.2d at 995. Although it did not have to apply the discovery rule to the case before it, the court stated that, in the jurisdictions that have adopted it, analysis under the rule is similar to that made when applying the principle of fraudulent concealment of the existence of a cause of action for malpractice and that the rule delays the running of the statutory period "until the client knows or should know all material facts essential to show the elements of that cause of action."[7] *Id.* at 996 n. 8.

■ Subsequent District of Columbia Court of Appeals cases have explicitly applied the discovery rule to *medical* malpractice cases and have specifically stated that *Weisberg* calls for the rule to be applied in *legal* malpractice cases. *See, e.g., Kelton v. District of Columbia,* 413 A.2d 919 (D.C.App.1980) (applying discovery rule to a medical malpractice suit); *Burns v. Bell,* 409 A.2d 614, 617 (D.C.App.1979) ("in all medical malpractice actions, the cause of action accrues when the plaintiff knows or through the exercise of due diligence should have known of the injury"; holding based partly on the court's conclusion that *Weisberg* had "already approved of the just and equitable results achieved by a similar approach in legal malpractice cases"). In light of these cases, we conclude, as did the district court, that the discovery rule applies to this case.

---

action for legal malpractice, *see* R. Mallen & V. Levit, *Legal Malpractice* §§ 388–94 (2d ed. 1981); Note, McClung v. Johnson: *Limitations in Legal Malpractice Actions,* 34 Baylor L.Rev. 269, 273–80 (1982); Note, *Attorney Malpractice: Towards An Illinois Statute of Limitations,* 1982 U.Ill.L.Rev. 479, 480–89; K. Reimann, *Malpractice Law,* 1981 Ann.Surv.Am.L. 771, 789–97.

**6.** The reasons for applying the discovery rule in legal malpractice have been explained as follows:

A lawyer is a legal expert; the client is not and cannot be expected to recognize substandard professional conduct. Requiring the client to ascertain malpractice at the moment of its occurrence casts upon her the unfair and impractical burden of either knowing as much about the law as does her attorney or hiring a second attorney to scrutinize the work of the first.

Comment, *New Developments in Legal Malpractice,* 26 Am.U.L.Rev. 408, 439 (1977).

**7.** Two commentators have elaborated on what this "essential-facts" test requires:

[t]he required knowledge, whether actual or imputed, must be of the attorney's acts or omissions, their wrongful nature and of the fact of injury; in other words, there is a cause of action for malpractice. The nature of representations made by the attorney to the client is a factor to be considered. The client, however, need only have a belief of wrongful conduct; neither knowledge of the precise legal theory nor the full extent of the damages is required. The premise of this "constructive" knowledge rule is that the client should be charged with the actual knowledge which could be obtained by due diligence and through the use of the means available. The resolution of these issues usually turns on questions of fact which must be litigated.

R. Mallen & V. Levit, *Legal Malpractice* § 394, at 476–77.

### C. Is There An Issue of Material Fact?

Summary judgment is not appropriate in a case applying the discovery rule if there is a genuine issue of material fact as to when, through the exercise of due diligence, the plaintiff knew or should have known of her injury. See *Williams v. Borden*, 637 F.2d 731, 738 (10th Cir.1980) (where the question is when the plaintiff knew or should have known of her injury, summary judgment cannot be granted unless the evidence is *so* clear that there is no genuine factual issue and the determinations can be made as a matter of law; "the movant must demonstrate entitlement [to a summary judgment] beyond a reasonable doubt and if an inference can be deduced from the facts whereby the nonmovant might recover, summary judgment is inappropriate"); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976) (genuine issues of material fact concerning time decedent and her husband discovered they might have a claim precluded summary judgment based on statute of limitations; "[i]nferences to be drawn from underlying facts ... must be viewed in the light most favorable to the party opposing the motion"), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *see also Burns v. Bell*, 409 A.2d 614 (D.C.App.1979) (in medical malpractice suit, summary judgment on ground that statute of limitations had run before action was instituted precluded because genuine issue of material fact existed as to whether patient discovered or should have discovered her injury more than three years before filing her action). Thus, we cannot uphold the district court's grant of summary judgment in this case if we conclude that there is a genuine issue of material fact as to when Byers knew or should have known all the material facts essential to show the elements of legal malpractice.

Burleson argues that the district court correctly determined that Byers discovered or should have discovered her injury by August 11, 1978, or at the latest, November 2, 1978. On August 11, Parsons received Byers' file from Burleson. That file contained Teimourian's answer to Byers' complaint, in which Teimourian asserted the defense that "if any foreign object was in plaintiff's breast as alleged, it was placed there by persons who are not parties to this litigation." Brief for Appellee at 7 n. 3; Brief for Appellant at 10. On November 2, Teimourian served Parsons with his answers to interrogatories, in which he stated categorically that he never uses sponges in breast reduction surgery. Since both of those events occurred more than three years before Byers filed her complaint against Burleson, the district court found and Burleson argues on this appeal that Byers' claim is barred by the running of the statute of limitations.

Unlike Burleson and the district court, we conclude that summary judgment was inappropriate in this case because a genuine issue of material fact exists as to the ultimate issue of when Byers discovered or should have discovered Burleson's alleged malpractice. Under the *Weisberg* essential-facts test, the statutory period did not *begin* to run when only a remote possibility existed that Burleson had been guilty of malpractice, nor was it tolled until Byers amassed an airtight case of legal malpractice against Burleson. Rather, the statutory period began to run when Byers (in fact or constructively, through Parsons) knew, or with due diligence should have known, that (1) it was likely Teimourian did not leave the foreign body in her breast; and (2) Burleson had been negligent in failing to sue Malcolm Grow within the two-year limitations period set by the Federal Tort Claims Act.

We believe that reasonable minds could differ on the basis of the underlying facts in this record as to when Byers had sufficient knowledge to meet this test. The first strong indicator to Byers that Burleson may have been negligent was her realization that Teimourian was probably not negligent. In her "Counterstatement of Material Facts In Issue," App. at 174–80, Byers asserts that from 1976–78 Burleson repeatedly assured her that she had a good case for medical malpractice against both Teimourian and Greater Southeast and that

he had contacted several doctors and other experts who would testify that Teimourian was negligent in leaving a foreign body in Byers' breast. In addition, when he turned over Byers' case file to Parsons on August 11, 1978, Burleson wrote in a cover memorandum that the file contained records that would "win" the case for Byers against Teimourian and proceeded to file an attorney's lien against any future judgment in the lawsuit. While Teimourian's answer to the original complaint asserted that any foreign object found in plaintiff's breast was not placed there "by persons who are ... parties to this litigation," this statement was specifically countered by other evidence in the file that indicated Teimourian *was* negligent.

Thus, on August 11, Byers had substantial reason to believe Teimourian had been negligent, a belief countered only by Teimourian's bare denial of liability and suggestion that some other unnamed person must have done the deed. There was as yet no evidence, at least in the record before us, to confirm Teimourian's denial. Thus, we are unwilling to say as a matter of law that on August 11, Byers should have realized that Teimourian's denial of liability was true.

As for the November 5, 1978 date, we think that a trier of fact could reasonably conclude that Byers (and her attorney, Parsons) did not know all the essential facts to establish Burleson's negligence on that date. The trier of fact could reasonably conclude that Byers and Parsons should have been allowed a reasonable period of time after receiving Teimourian's answers to interrogatories to read them and to make a serious follow-up inquiry of Teimourian, Malcolm Grow, Burleson, and Burleson's supposed group of experts. On November 5, Byers had only Teimourian's word that he did not use sponges in his reduction mammoplasty operations. Were the trier of fact to allow Byers as little as five days as a reasonable period for a follow-up inquiry after the receipt of the interrogatories, less than three years would have elapsed since she should have realized that Teimourian probably was not negligent.

Moreover, knowledge of Teimourian's probable lack of fault might not suffice to charge Byers with knowledge of Burleson's negligence. Given the egregious nature of a lawyer's failure to sue the right defendant, the trier of fact could conclude that once Byers knew that Teimourian was probably not at fault, she should also have known that Burleson likely was. But it is also possible that Burleson's failure to sue anyone at Malcolm Grow was a result of a reasonable belief that Teimourian was the only possible negligent party. It is a factual question whether the two dates (when Byers should have known that Teimourian probably was not negligent, and when Byers should have known that Burleson likely was negligent) coincide.

In sum, there are genuine issues of material fact to be resolved regarding the point at which Byers or her attorney discovered or should have discovered the essential facts necessary to a malpractice action. This is particularly so because application of the discovery rule invariably involves questions of knowledge and judgment, questions that should not generally be decided as a matter of law if there is any doubt as to the inferences to be drawn from the underlying facts. *Williams v. Borden,* 637 F.2d at 738; *Goodman v. Mead Johnson & Co.,* 534 F.2d at 575.[8] We therefore conclude that the

8. See also *Yazzie v. Olney, Levy, Kaplan & Tenner,* 593 F.2d 100 (9th Cir.1979) (legal malpractice suit for failure properly to prosecute clients' claims; district court's grant of summary judgment on ground that action was barred by statute of limitations was erroneous because a genuine issue of material fact existed as to when the clients discovered the alleged malpractice); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith,* 494 F.2d 168, 171–72 (10th Cir.1974) ("a court should not grant summary judgment for a defendant if there is a viable issue of fact as to when the limitations period began.... It would seldom, if ever, be possible for a judge to determine summarily when the injured person in a case [involving the issue of actual or constructive knowledge of fraud for purposes of commencement of limitations period] ... became fully aware that he or she had been victimized. An appraisal of the full testimony is generally called for"); *Pinkerton v. West,* 353 So.2d 102 (Fla.Dist.Ct.App.1977) (when attorney's negligence became known to

district court erred in granting Burleson's motion for summary judgment and that a hearing is required to determine when Byers had sufficient facts to show that Burleson was negligent in failing to sue the proper parties.

the client determines the applicability of the statute of limitations to plaintiff's cause of action for malpractice and is a question of fact to be decided by the trier of fact and not by the court in a summary proceeding); *Forest Grove Brick Works v. Strickland,* 277 Or. 81, 559 P.2d

## III. CONCLUSION

For the foregoing reasons, we reverse the grant of summary judgment by the district court and remand the case for further proceedings.

*It Is So Ordered.*

502, 506 (1977) ("[i]t usually is not feasible to resolve on motion for summary judgment cases involving questions such as when knowledge is discoverable by reasonable diligence of plaintiff").