Peter D. EHRENHAFT, Appellant,

v.

MALCOLM PRICE, INC., et al., Appellees.

No. 83–1261.

District of Columbia Court of Appeals.

Argued June 28, 1984.

Decided Nov. 14, 1984.

Geoffrey F. Aronow, Washington, D.C., with whom Philip A. Lacovara, Washington, D.C., was on the brief, for appellant. Peter D. Ehrenhaft, Washington, D.C., also entered an appearance pro se.

Robert A. Rich, Washington, D.C., with whom Norman H. Singer, Washington, D.C., was on the brief, for appellee Malcolm Price, Inc.

Courts Oulahan, Washington, D.C., for appellee Charles H. Atherton.

Before MACK, NEWMAN and ROGERS, Associate Judges.

MACK, Associate Judge:

■■■ The instant appeal reaches this court upon review of separate motions for summary judgment granted in favor of defendants-appellees. We hold that the motions were improperly granted, for two reasons. First, the trial court that granted the motions did so in contravention of the "law of the case" as it had been established by a prior coordinate court on the issue of whether language in a contractual clause was ambiguous. Second, we hold that the "discovery rule"[1] should be extended under the facts of this case to determine the commencement of the statute of limitations

in the context of the contract, warranty, and negligence claims herein alleged. In so holding, we conclude that negligence claims are cognizable for alleged breach of contractual duties, and that the discovery rule is appropriately applied to an action based on breach of contract and warranty. Application of the discovery rule leads us to conclude further that there exists a genuine issue of material fact as to when the statute of limitations began to run. Accordingly, we reverse and remand for resolution of factual matters.

We point out that, as appellant's counsel acknowledged during oral argument, this suit may be resolved on remand based solely upon the law of the case doctrine. We are of the view, however, that to reach only that issue is inexpedient and impractical given that appellant will undoubtedly seek to pursue before the trial court the same alternative theories to make his suit timely that he raises in depth before this court. Therefore, we consider the issue of the applicability of the discovery rule indeed to be properly before us. Given this disposition, appellant's alternative theories to preserve the timeliness of his claim, based upon estoppel or repair, need not be addressed.

### I. Facts

Appellant filed this lawsuit in the civil division of the Superior Court on September 3, 1982, seeking compensation for various defects which arose in connection with a new room, referred to as the patio room, built onto appellant's house by appellee Malcolm Price, Inc., a general contractor, and designed by appellee Charles A. Atherton, an architect.

In appellant's complaint, titled by him as one "on a contract and for negligence," he set forth the following facts: On April 5, 1977, appellant entered into a written agreement[2] with Price to build an addition-

---

1. Briefly stated, under the "discovery rule," a cause of action accrues when the plaintiff knows or should have known of the injury.

2. The agreement incorporated by reference the contract for construction. For these purposes, the term agreement will be used interchangeably with the term contract.

al room onto appellant's house. Atherton was identified as the architect in the agreement. The agreement provided that all work "will be of good quality, free from defects and in conformity with the Contract Documents."[3] Construction was completed in the autumn of 1977.

Appellant's complaint specified three claims for relief as follows:

(1) Plumbing in the south wall

During the winter following the completion of the patio room (1977–78), the plumbing lines in the south wall froze and burst. Price repaired the pipes without charge. During the next winter (1978–79), the same pipes froze and burst again. Price again returned to repair the damage and informed appellant that there was insufficient insulation in the wall to protect the pipes from freezing. Price allegedly represented that insulation would be added. On this occasion, Price's plumber installed shut-off valves because the plumber believed that sufficient insulation could not be installed in the wall. The architect, Atherton, was consulted but allegedly did nothing to resolve the problem. Appellant further claimed that on or about December 15, 1981, he used the shut-off valves that had been installed in 1979; but that during the winter of 1981–82[4] the pipes froze and burst for the third time, resulting in damage that was not evident until appellant turned on the water supply in the patio room in March, 1982. On this occasion, the contractor, Price, refused to make the necessary repairs without charge. As a result, appellant engaged another contractor who informed him that there was still virtually no insulation in the south wall.

Based upon the above purported defects in the design and construction of the patio's south wall and the related plumbing,

appellant set forth three theories of liability against Price and Atherton: (a) that appellees "breached their contract" to build the patio room according to the terms of the agreement, (b) that they "breached their implied and express warranties" that their work would be free from faults and defects, and (c) that appellees acted with "negligence" in performing their contractual obligations in the design and construction of the south wall and in their efforts to rectify the defects.

(2) Window panes in the west wall

During the winter of 1981–82, appellant noticed that panes of insulated glass in the patio room's west all had become fogged. The panes required replacement, at which time appellant was informed by another contractor that the problem had resulted from the initial faulty installation of the glass.

In connection with the design and construction of the west wall, appellant reasserted his three claims that appellees (a) breached their contract under the agreement, (b) breached their implied and express warranties, and (c) acted with negligence in the performance of their contractual obligations.

(3) Heater under the bench

Appellant complained to Price prior to the repairs undertaken in 1978 that excessive heat built up under the bench along the west wall in the patio room. Although Price added insulation to the bench, appellant alleged that the build-up of heat persisted and that he was informed by the new contractor, who effected the repairs in the spring of 1982, that the heater had been installed in a manner that would cause a dangerous build-up of heat under the bench.

---

3. Appellant did not append a copy of the contract to his complaint. Instead, he cited to specific language from the contract, which appellant's counsel at oral argument represented to comprise the ònly language dealing with the subject of warranty.

No challenge was made as to the accuracy of the provision excerpted by appellant from the

contract. It appears from the record that appellee Atherton appended a copy of the agreement to his answer to appellant's complaint.

4. Appellant's complaint makes no mention of any plumbing-related damages during the winter of 1979–80 or 1980–81.

Thus, in his third claim for relief, relating to the design and installation of the heater in the patio room, appellant renewed his contentions that appellees (a) breached their contract, (b) breached their implied and express warranties, and (c) acted with negligence in the performance of their contractual duties.

The complaint stated, finally, that appellant had unsuccessfully sought reimbursement from appellees for the cost of damages sustained as a result of the alleged defects, and that he had unsuccessfully attempted to arbitrate the matter.

### A. Proceedings before the first trial court

Prior to filing an answer, appellees jointly filed a motion to dismiss, alleging that the statute of limitations for contract actions applied and that the three-year period had run on each claim.[5] They further argued that the negligence claim in essence constituted a contractual, not a tortious, allegation of liability, and therefore was not cognizable as an independent claim. In his opposition to the motion to dismiss, appellant set forth alternative theories in support of his contention that the claims were timely,[6] and argued that an action in negligence did indeed properly lie. Appellant in addition submitted an affidavit in support of his opposition. The trial court, Judge Morrison presiding, denied appellees' motion to dismiss without prejudice on July 14, 1983.

### B. Proceedings before the second trial court

On February 16, 1983, Atherton filed an answer with exhibits attached, and Price filed a separate answer. That same day Price filed a motion for summary judgment based upon expiration of the statute of limitations. Appellant filed his opposition to Price's motion on March 8, 1983, attaching his affidavit and various letters to him from appellees as exhibits. The second trial court, Judge Doyle presiding, granted Price's motion for summary judgment on August 16, 1983. Shortly thereafter, on September 22, 1983, Judge Doyle issued a written order stating that the same ruling on the motion for summary judgment was applicable to Atherton.

### II. Law of the Case

Appellant contends that Judge Morrison's ruling on the motion to dismiss established the "law of the case" based upon which Judge Doyle was required to deny Price's motion for summary judgment.[7] While we do not agree that Judge Morrison's initial ruling in and of itself required denial of the motion for summary judgment, we do agree that it provided the groundwork on a definitive matter of law that Judge Doyle could not properly deviate from or reconsider.

▄▄▄▄▄ Our analysis begins with a statement of applicable law. The doctrine known as the "law of the case" operates to preclude one trial court from ruling on a question of law already decided in the same case by a different court of coordinate jurisdiction. *P.P.P. Productions, Inc. v. W & L, Inc.*, 418 A.2d 151, 152 (D.C.1980). This serves to discourage "judge-shopping" by ensuring that only a higher court can reverse or modify a settled point of law. *Kritsidimas v. Sheskin*, 411 A.2d 370, 371 (D.C.1980). As we stated in *P.P.P. Productions, supra,*

This doctrine is applicable when (1) the motion under consideration is substantially similar to the one already raised before, and considered by, the first court; (2) the first court's ruling is "sufficiently 'final' "; and (3) the prior ruling is not

---

5. D.C.Code § 12–301(7) (1981).

6. These arguments, including application of the discovery rule or a theory of estoppel or repair to toll the running of time, are renewed on appeal. *See supra.*

7. As noted *supra,* Judge Doyle in a written order applied the same ruling which granted summary judgment in favor of Price to Atherton. That order states that Atherton did not file a written motion but rather argued the motion orally.

"clearly erroneous in light of newly presented facts or a change in substantive law."

418 A.2d at 152 (citing *Kritsidimas, supra,* 411 A.2d at 372). Review of these three factors persuades us that, as we concluded in *P.P.P. Productions, supra,* the circumstances surrounding the initial denial of appellees' motion to dismiss require that Judge Morrison's decision be accorded the same measure of law of the case finality accorded rulings on suppression motions and motions to dismiss for want of prosecution. *Id.* at 153.

First, appellee Price's motion for summary judgment was essentially identical to the motion to dismiss filed jointly by appellees before Judge Morrison. Price renewed his contentions that the cause of action was barred by the three-year statute of limitations applicable to contracts and that a claim in negligence did not properly lie. Thus, albeit true that Price's motion for summary judgment set forth a far more comprehensive statement of law, we are of the view that his motion was "substantially similar" to the prior motion to dismiss.

Second, we conclude that Judge Morrison's ruling on the motion to dismiss was "sufficiently final" for law of the case purposes. The question of law resolved with finality by Judge Morrison was that the critical clause in the agreement that all work "will be of good quality free from defects and in conformity with the contract documents" was ambiguous, and therefore required interpretation according to the intent of the parties. Specifically, Judge Morrison stated:

Now, in my view, those words [in the agreement], while they may be part of a standard contract, are not, when I'm looking only at pleadings, free from ambiguity. The *Zellan* court talked about how a warranty or guarantee may either be an affirmation of a condition as of the

date of delivery of the property or a promise to maintain or both. Whether it's an affirmation or a promise depends upon the meaning of the contract. That meaning, of course, is to be ascertained from the words used, if it can be understood from them. And if the language is ambiguous, then the intent of the parties must be ascertained by some other means.

The *Zellan* decision cited by Judge Morrison is *Zellan v. Cole,* 87 U.S.App.D.C. 9, 183 F.2d 139 (1950). In that case, the court determined that the language of a warranty provision was ambiguous on the question of whether it constituted an affirmation or a promise to maintain the premises in a certain condition. Since the wording was ambiguous, the intent of the parties had to be determined from their actions. After concluding, based on those actions, that the contract represented a promise to maintain the premises, the *Zellan* court held that "the statute of limitations began to run when the contractor abandoned his efforts." [8] *Id.,* 183 F.2d at 139.

Clearly, then, the construction of the particular contract clause at bar has a direct impact upon *when* the statute of limitations began to run, and this undoubtedly led Judge Morrison to request that the understanding of the parties be "flushed out" in more detail. To this end, he suggested that the contract clause might be more thoroughly construed in the context of a motion for summary judgment. However, despite Judge Morrison's ruling, Judge Doyle found that the contract clause "on its face was clear and unambiguous." It was on this precise issue that Judge Doyle departed from the law of the case.

The third prong of the test of *P.P.P. Productions, supra,* is also met in this case, in that Judge Morrison's prior ruling was not clearly erroneous given new facts

---

**8.** Judge Morrison also cited another case, *Fowler v. A. & A Co.,* 262 A.2d 344 (D.C.1970), where the court, as in *Zellan, supra,* construed a warranty provision in a contract to be a "promise to do whatever is necessary ... to provide the

guaranteed dry basement." *Id.* at 347. Here too, the nature of the warranty bore directly upon when the statute of limitations commenced to run.

or a change in substantive law. Plainly, there was no change in applicable law. Neither, we believe, was there a change in pertinent facts. It is true that in ruling upon Price's motion for summary judgment, Judge Doyle had the benefit of full pleadings in the case, in addition to appellant's affidavit,[9] letters he had received from Price, and Atherton's deposition. The transcript of the proceedings before Judge Morrison was also part of the record before Judge Doyle. Nonetheless, given that Judge Doyle found that the contract clause was *un*ambiguous, he obviously never inquired into whether these documents provided a sufficient base from which to flush out the intent of the parties.

■ In sum, we hold that Judge Doyle erred in ruling that the contract clause was unambiguous and thus not within the purview of the *Fowler* and *Zellan* cases, and erred in reasoning that he was not in any way bound by Judge Morrison's prior ruling. To the contrary, as we have shown, Judge Morrison's ruling was final and not clearly erroneous, and it is without dispute that the motion for summary judgment was substantially similar to the motion to dismiss. We reject appellees' argument that Judge Morrison's expression of a "tentative view" referred to his ruling on the ambiguity of the contract. We instead read his "tentative view" to be his recommendation that a summary judgment procedure would be best suited to resolve this particular point; he merely tentatively suggested that the issue of whether the warranty provision constituted an affirmation or promise to maintain in light of *Fowler* and *Zellan* might be resolved by way of motions for summary judgment. Judge Doyle erred in rejecting the prior determination that the contract was ambiguous,

which Judge Morrison's decision had established as the law of the case.[10]

### III. *Tort and Contract Claims*

We will divide the next portion of our analysis into three sections, addressing: (1) when a cause of action is typically said to "accrue" in contract and negligence claims, (2) whether a cause of action in negligence is cognizable under the facts of this case, and (3) applicability of the discovery rule to causes of action sounding in both tort and contract. As will become evident in our discussion of the applicability of the discovery rule, for the purposes of this case we make no distinction between the point of accrual of the contract/warranty claims and the negligence claim. In other words, in applying the discovery rule under these facts, the claims alleged accrued at the same point in time regardless of which theory is employed.[11] We begin our discussion with the traditional points of accrual in contract and negligence actions in order to provide contrast with application of the discovery rule.

### (A)(1) *Accrual of a cause of action on a contract*

■ Under D.C.Code § 12–301(7) (1981), in order to maintain a cause of action on a simple contract, express or implied, a lawsuit must be brought within three years following the accrual of the claim. The term "accrual" is left undefined by the statute and is thus left to judicial interpretation. Courts of this jurisdiction provided the necessary gloss on this term several decades ago, and it is well settled that in a contract action, the statute of limitations begins to run "from the date a contract is breached." *Fowler v. A & A Co., supra* note 8, 262 A.2d at 347; *see Foley Corp. v. Dove,* 101 A.2d 841, 842

---

**9.** Judge Morrison also had before him appellant's affidavit, but questioned the propriety of taking it into consideration in ruling on the motion.

**10.** Our decision obviously in no way confirms Judge Morrison's initial ruling or intimates that

the case at bar necessarily bears any resemblance to *Fowler* or *Zellan*.

**11.** We need not reach the question of whether this will always be the case.

(D.C.1954); *Poole v. Terminix Co.*, 91 U.S. App.D.C. 287, 288, 200 F.2d 746, 747 (1952). In other words, the "contract is breached when [the] defective work is done and [ ] the statute [of limitations] begins to run from that time." *Lieberman v. Aldon Construction Co.*, 125 A.2d 517, 518 (D.C. 1956). Absent fraud (which is not alleged) or the existence of a continuing promise to maintain, *see Fowler, supra; Zellan, supra;* and Part I, were we to apply the law strictly, the three-year statute of limitations on appellant's contract claims would begin to run when work was completed in the fall of 1977, and therefore his present contract claims would be time-barred.

### (A)(2) *Accrual of a cause of action in negligence*

Under D.C.Code § 12–301(3) (1981), a lawsuit to maintain a cause of action for the recovery of damages to real or personal property also must be brought within three years of the claim's accrual. Here too, we must look to case law for the meaning of the term "accrue." In the leading case of *Hanna v. Fletcher*, 97 U.S.App.D.C. 310, 313, 231 F.2d 469, 472, *cert. denied*, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956), the court stated that in a suit based upon negligence and sounding in tort, the cause of action "did not accrue until injury resulted from the alleged negligence." This same rule was applied to malpractice suits in *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson*, 127 U.S.App.D.C. 93, 94, 381 F.2d 261, 262 (1967), *cert. denied*, 390 U.S. 946, 88 S.Ct. 1033, 19 L.Ed.2d 1135 (1968). In *Hanna*, appellant suffered injury while falling down a flight of stairs leading to the street from his home. The injuries were suffered in 1949 and the complaint alleged that the repairs to the steps and railing were negligently performed in 1942. Despite the intervention of seven years, the cause of action was held to be timely. 97 U.S.App.D.C. at 313, 231 F.2d at 472.

■ In the case at bar, Judge Doyle found that appellant suffered his injury [12] five and one-half years before his complaint was filed. Presumably, he identified the point at which the statute began to run as the date appellant's pipes first froze and burst. The record supports this conclusion with respect to appellant's cause of action based upon the construction and design of the south wall and its related plumbing. While a traditional negligence theory fails as to this part of the claim, it is not clear when appellant suffered injury due to defects in the installation of the window panes and the heater. The possibility that such injury was not suffered until 1982 would make appellant's claims timely even without application of the discovery rule and raises an issue of material fact that must be addressed on remand.

### B. *Appellant's cause of action sounded in both contract and tort*

In granting Price's motion for summary judgment, Judge Doyle rejected the applicability of a negligence theory to this case. He stated:

> Damages sought by the Plaintiff for the alleged negligence are identical to his damages for his contract actions. If the Court were to accept this view, all contract actions would be transformed into negligence actions by simply changing the words of the complaint and thus allowing plaintiffs to avoid application of contract law and circumvent the rules that actions for defective work accrue when the work is performed, not discovered.

We disagree with this determination and hold instead that appellant's complaint properly sounded in both contract and tort.

---

**12.** This finding was actually incidental to his ruling because he held that a negligence theory did *not* apply to the case. *See infra* Part III(B).

■ With respect to appellant's action against Atherton,[13] the law is clear that an action in negligence under the rubric of architectural malpractice is in fact appropriate. In *Noble v. Worthy*, 378 A.2d 674 (D.C.1977), this court stated, "[a]rchitects are held to a standard of performance which requires them to employ that degree of skill and care ordinarily used by their colleagues." *Id.* at 676 (footnote omitted) (citing *Frank M. Dorsey & Sons v. Frishman*, 291 F.Supp. 794, 796–97 (D.D.C. 1968)). Judge Doyle made no specific findings as to whether Atherton might also be liable under the contract, and accordingly, we leave this issue to be addressed on remand.

■ It is equally clear that, with respect to Price, a cause of action sounding in both contract and tort is cognizable. According to Professor Prosser, "American courts have extended the tort liability for misfeasance to virtually every type of contract where defective performance may injure the promisee." W. PROSSER, LAW OF TORTS § 92, at 617 (4th ed. 1971). Research has not disclosed any case from the District of Columbia squarely setting forth the above proposition, but we find support for it by inference in several cases. For example, in *Glekas v. Boss & Phelps, Inc.*, 437 A.2d 584, 588 (D.C.1981), we noted that "it is frequently appropriate to assert both breach of contract and negligence claims in an agency case"; and in *Bay General Industries, Inc. v. Johnson*, 418 A.2d 1050, 1055 (D.C.1980), we found that where appellants initially pursued relief under a theory of specific performance of a contract, they were not subsequently barred from proceeding under a theory alleging intentional tortious conduct. *See also McCoy v. Coral Hills Associates*, 264 A.2d 896, 899 (D.C.1970) ("A duty, or obligation of due care in tort, may be created by means other than contract."); *Wickersham v. DuBois*, 34 App.D.C. 146, 149, 152 (1909) (duty of

care may arise irrespective of the contract). *But see Prouty v. National Railroad Passenger Corp.*, 572 F.Supp. 200, 206 (D.D.C. 1983).

Moreover, appellant has brought to our attention cases from other jurisdictions in which courts have recognized that the failure to perform work properly may at times give rise to claims both for breach of contract and for negligence. The Wyoming Supreme Court has stated:

> In construction contracts, there is an implied warranty that the work will be performed in a skillful, careful, diligent and workmanlike manner. Where negligence on the part of the contractor results in a breach of this warranty, a cause of action ex contractu and a tortious action premised on negligence, or both, are available to the contractee.

*Cline v. Sawyer*, 600 P.2d 725, 732 (Wyo. 1979). Similarly, the California Supreme Court has stated:

> A tort may grow out of or be coincident with a contract, and the existence of a contractual relationship does not immunize a tortfeasor from tort liability for his wrongful acts in breach of the contract.

*Eads v. Marks*, 39 Cal.2d 807, 249 P.2d 257, 260 (1952) (citation omitted); *see, e.g., Escambia Treating Co. v. Aetna Casualty & Surety Co.*, 421 F.Supp. 1367, 1370 (N.D. Fla.1976) (applying Florida law); *Fire Association of Philadelphia v. Allis Chalmers Manufacturing Co.*, 129 F.Supp. 335, 348–49 (N.D.Iowa 1955) (applying Iowa law); *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81, 84 (1981); *Garden City Floral Co. v. Hunt*, 126 Mont. 537, 255 P.2d 352, 356–57 (1953); W. PROSSER, *supra* § 92, at 616–18.

The distinction between a claim based on breach of contract and one for negligence may of course have important consequences in a lawsuit, including different requirements of proof and assessment of

---

**13.** Judge Doyle's ruling referred only to Price's motion. Nonetheless we assume, given the short form but expansive reach of his subsequent application of the ruling to Atherton, that he found the negligence theory equally inappropriate as to Atherton.

damages, assignability of a claim or applicability of a different statute of limitations. *See* W. PROSSER, *supra* § 92, at 618–22. Because D.C.Code § 12–301 sets forth a three-year statute of limitations for both tort and contract claims, for our present purposes it is sufficient to determine that a tort action is cognizable against Price and Atherton. We leave to the trial court the development of the facts pertinent to these claims on remand.[14]

## C. *Discovery Rule*

This court has stated that under the discovery rule, a particular cause of action accrues "when the plaintiff knows or through the exercise of due diligence should have known of the injury." *Burns v. Bell*, 409 A.2d 614, 617 (D.C.1979). Although this court has not before applied the rule in the context of contract/warranty claims or architectural malpractice, we have applied the rule to cases of legal malpractice, *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 996 & n. 8 (D.C.1978)[15] and to medical malpractice, *Burns, supra*, 409 A.2d at 617. In *Burns*, we recognized that the rule emerged to redress situations in which the fact of injury was not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred. The typical and compelling case was one in which a foreign object was left inside a patient after an operation, and the patient did not "discover" its presence until more than three years after the time of surgery. *See Burke v. Washington Hospital Center*, 293 F.Supp. 1328, 1333–34 (D.D.C.1968). In such circumstances, the claim would be time-barred without application of the discovery rule. In *Burns*, we extended application of the rule to *all* medical malpractice actions, 409 A.2d at 617, as had the federal circuit. *See Sanders v. United States*, 179 U.S.App.D.C. 272, 274, 551 F.2d 458, 460 (1977); *Jones v. Rogers Memorial Hospital*, 143 U.S.App.D.C. 51, 52–53, 442 F.2d 773, 774–75 (1971); *Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242, 243 (D.D.C.1975), *aff'd mem.*, 177 U.S.App. D.C. 270, 543 F.2d 417 (1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). In reaching its decision, the *Burns* court took into account the patient's tendency to rely upon his physician's professional skill and the fact that the patient most likely lacks medical expertise. The court then concluded:

> Balancing the magnitude of the injury to the plaintiff and his interest in relief against the potential prejudice to the defendant and the latter's interest in being free from stale claims, the time of the act rule is inappropriate to apply to medical malpractice actions.

409 A.2d at 616.

Subsequent to *Burns*,[16] federal courts in this jurisdiction have applied the discovery rule to claims of legal malpractice, *Byers v. Burleson*, 230 U.S.App.D.C. 62, 66, 713 F.2d 856, 860 (1983), and have held that under District of Columbia law, the discovery rule would be applied in latent disease cases. *Wilson v. Johns-Manville Sales Corp.*, 221 U.S.App.D.C. 337, 342–43,

---

**14.** We also leave unaddressed what impact, if any, D.C.Code § 12–310 (1981) may have upon a suit alleging claims in both tort and contract. *See President and Directors of Georgetown College v. Madden*, 505 F.Supp. 557, 580 (D.Md. 1980), *aff'd in relevant part*, 660 F.2d 91, 94–95 (4th Cir.1981).

**15.** This court was perhaps hesitant in its adoption of the discovery rule in *Weisberg, supra*, but in *Burns, supra*, we made clear that the court in *Weisberg* did indeed approve of application of the discovery rule in legal malpractice cases. 409 A.2d at 617.

**16.** This court briefly commented on the discovery rule in one other case, *Kelton v. District of Columbia*, 413 A.2d 919 (D.C.1980). Under the particular circumstances of that case, we chose not to expand the discovery rule in the face of the plain statutory language of D.C.Code § 12–309 indicating when the statute of limitations in an action against the District of Columbia begins to run. *Id.* at 921 & n. 4. We do not view that language to preclude further expansion of the rule in contexts analogous to *Weisberg, supra*, and *Burns, supra*. *See Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330, 1337–38 (D.D. C.1982).

684 F.2d 111, 116–17 (1982) (manifestation of asbestos-related disease). Also, in a claim for personal injury based on products liability (manufacture of DES), application of the discovery rule under District of Columbia law went unchallenged. *Dawson v. Eli Lilly & Co., supra* note 16, 543 F.Supp. at 1333.

In extending the discovery rule beyond the area of professional malpractice and into the context of latent disease, the circuit court in *Wilson* noted that the case before it posed an analogous situation "in which the fact of injury may not be readily discernible" at the time when actually incurred. 221 U.S.App.D.C. at 342, 684 F.2d at 116 (footnote omitted). The court further determined that the interests of the plaintiff and of justice outweighed those of the defendant and thus called for application of the "sensibly based" discovery rule. *Id.* at 343, 684 F.2d at 117.

 In light of these cases, we hold that the discovery rule is properly applicable to preserve the contract, warranty and negligence claims set forth in the case at bar. The factors that supported application of the rule in other contexts are equally applicable here. First, a client in appellant's position, who has arranged for the design and construction of a new room to his house, must undoubtedly rely upon the professional skills of those hired to perform the work. As a lay person, he is most likely without the requisite knowledge to determine whether the room has been properly designed or constructed. Moreover, it is unreasonable to expect the client to engage yet another professional to oversee the work as it is performed. *See Burns v. Bell, supra,* 409 A.2d at 617.

Second, the difficulty in recognizing a deficiency in either design or construction is even more problematical when the deficiency is latent in nature. Just as in the cases involving exposure to a dangerous product that manifests itself in disease only years later, like asbestos (*Wilson v. Johns-Manville Sales Corp., supra*), or DES (*Dawson v. Eli Lilly & Co., supra*),

and as in the case of negligent surgery whose ill effects are manifested only years later (*Burns, supra*), this type of injury may also not manifest itself until after the statute of limitations has run under traditional principles. Surely it is inconsistent with our notions of justice to interpret the "accrual" of a cause of action to occur prior to a point in time at which a person would reasonably have knowledge of any wrongdoing. *See City of Aurora v. Bechtel Corp.,* 599 F.2d 382, 387–88 (10th Cir.1979) (citing *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603, 607 (1970)).

 Third, after balancing the plaintiff's interest in having the protection afforded by the discovery rule against potential prejudice to the defendant, we conclude, as we did in *Burns, supra,* that the former's interests are more compelling. It is clear that statutes of limitations are statutes of repose.

> [T]hey protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) (citations omitted). It is equally evident that limitation periods "find their justification in necessity and convenience rather than in logic.... Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). Accepting the pragmatic purposes served by these statutes, we nonetheless are of the view that the added burden imposed upon a defendant to defend against an "old" claim due to application of the discovery rule is not unreasonable. This determination favors a plaintiff's interest in compensation but is somewhat tempered by the fact that the burden of proof remains upon the plaintiff. *City of*

*Aurora, supra,* 599 F.2d at 389. Application of the discovery rule in suits based upon deficient design and construction "does not frustrate the policies underlying the statute of limitations where the injured party does not, and in the exercise of reasonable diligence, could not have known of his claim prior to its discovery." *Id.* A plaintiff who will benefit by invocation of the discovery rule will not be one who has "sat" on his rights to gain legal advantage.

■ Finally, we point out that the interests of judicial economy militate in favor of application of the discovery rule. In cases like the one at bar, where the professional returns upon request to remedy damages resulting from defective work, to preclude application of the rule would likely serve to encourage litigation in the first instance, rather than as a last resort. *Cf. Wilson, supra,* 221 U.S.App.D.C. at 345, 684 F.2d at 119 (community interest in compensation for injured party undermined if, upon manifestation of any harm, courts require party to sue for all future harms).

■ We therefore hold that in an action based upon tort and contract claims arising out of allegedly deficient design and construction of an addition to a house, the cause of action does not accrue until the plaintiff knows, or in the exercise of reasonable diligence should know, of the injury.[17]

It is noteworthy that many other jurisdictions have reached similar conclusions in analogous contexts. *See, e.g., City of Aurora, supra,* 599 F.2d at 389 (applying discovery rule under Colorado law in action for professional malpractice against architect or engineer); *April Enterprises v. KTTV,* 147 Cal.App.3d 805, 828–31, 195 Cal. Rptr. 421, 435–37 (1983) (applying discovery rule to certain contract breaches where harm will not reasonably be discovered until a future time); *Owens v. Brochner, supra,* 172 Colo. at 531–32, 474 P.2d at 607 (discovery rule applied in medical malpractice suits); *Kinsey v. Scott,* 124 Ill.App.3d 329, 79 Ill.Dec. 584, 591–92, 463 N.E.2d 1359, 1366–67 (1984) (applying discovery rule to suit involving fraud and tortious misrepresentation); *Brown v. Ellison,* 304 N.W.2d 197, 200–01 (Iowa 1981) (holding discovery rule applicable to cases arising from express and implied warranties); *Steelworkers Holding Co. v. Menefee,* 255 Md. 440, 258 A.2d 177, 179–80 (1969); *Filcek v. Utica Building Co.,* 131 Mich.App. 396, 345 N.W.2d 707, 708–09 (1984) (in suit alleging negligent construction, statute of limitations began to run when property damage was or should have been discovered); *Clark v. Hawkes Hospital,* 9 Ohio St.3d 182, 459 N.E.2d 559, 561 (1984) (applying discovery rule in medical malpractice action); *General State Authority v. Lawrie and Green,* 24 Pa. Commw. 407, 356 A.2d 851, 855 (1976) (stat-

---

**17.** To the extent that *Poole v. Terminix Co., supra,* 91 U.S.App.D.C. at 287–88, 200 F.2d at 746–47, and the municipal court decision which it affirms, 84 A.2d 699, 700 (D.C.1951), rejected the argument that the statute of limitations for breach of an implied warranty should begin to run from the time the alleged injury was discovered, and not from the time the work was completed, we no longer consider it persuasive. In *Poole* the court spoke similarly of the "general rule"—a rule that in our view has not been adhered to in subsequent decisional law (treating varying factual situations) in this court and in the District of Columbia federal courts. *See Fowler v. A & A Co., supra,* where we held, under factual circumstances similar to the instant case, that the statute of limitations begins to run from the date that a contractor breaches the contract by failing to correct a defect on

demand. *See also Zellan v. Cole, supra,* relied upon by *Poole,* holding that since the parties considered a contract to be a promise to maintain premises in a certain condition, the statute of limitations began to run when the contractor abandoned his efforts.

In the interest of maintaining inviolate the rule of *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), however, this division has opted to negate any question of conflict by following the approach employed in *Dupont Circle Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 403 A.2d 314, 318 (D.C.1979). Nondivision members of the court have been asked to examine the soundness of this decision without formal en banc consideration. Each judge has made a determination not to call sua sponte for an en banc vote on the issue.

ute of limitations in action upon construction contract begins to run when plaintiff might reasonably have known of alleged defect); *Martin v. Patent Scaffolding*, 37 Wash.App. 37, 678 P.2d 362, 365–66 (1984) (applying discovery rule to products liability cases); *Kundahl v. Barnett*, 5 Wash. App. 227, 486 P.2d 1164, 1166–67 (1971) (extending discovery rule to negligence by nonmedical professional, specifically, by land surveyor); *see also Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass.App. 645, 461 N.E.2d 256, 259 (1984) (discussing general applicability of discovery rule); *E.A. Williams, Inc. v. Russo Development Corp.*, 82 N.J. 160, 411 A.2d 697, 699 (1980) (discussing expansion of discovery rule); *Hooper Water Improvement District v. Reeve*, 642 P.2d 745, 747–48 (Utah 1982) (Howe, J., concurring) (noting that under many of Utah's statutes of limitations, "a cause of action is generally interpreted to 'accrue' when plaintiff discovers or should have discovered the injury"); *Duke v. Housen*, 589 P.2d 334, 346 n. 8 (Wyo.), *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979) (applicability of discovery rule in Wyoming); *cf. Lee v. Morin*, 469 A.2d 358, 360 (R.I.1983) (statute of limitations begins to run in case involving improvement to real property when evidence of injury is "sufficiently significant to alert the injured party" of possible defect). *But see Brown v. Ellison, supra*, 304 N.W.2d at 201 (citing authority disfavoring application of discovery rule to actions based on contract and express and implied warranties).

We note, in addition, that the Maryland Court of Appeals in *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981) has gone so far as to apply the discovery rule in *all* actions. Interestingly, *Poffenberger* involved a suit brought against the builder of a house alleging both breach of contract and negligence—a set of facts not dissimilar to those at bar. For present purposes, however, we do not reach so far as to apply the rule to all cases. *See id.* 431 A.2d at 681–82 (Rodowsky, J., concurring) (discovery rule should be applied on case by case basis); *April Enterprises v. KTTV, supra*, 147 Cal.App.3d at 832–33, 195 Cal. Rptr. at 436–37 (refusing to adopt Maryland's broad view, opting instead to apply discovery rule as required by individual facts). Instead, we decide only the instant case, leaving to the future the application of the rule by analogy to the facts.

IV. *Issues of Material Fact*

■ Having determined that the discovery rule is applicable to the contract, warranty, and negligence claims alleged, we now turn to the question of whether genuine issues of material fact exist as to when appellant knew, or with reasonable diligence could have known, of the three defects for which he seeks damages. We hold that this · determination cannot be made in a summary manner. Instead, there exists a factual dispute as to when appellant became aware of the faulty plumbing: whether he knew or should have known of the problem in the winter of 1977–78 when the pipes first burst, or as late as March 1982, when he received a report from a new contractor, or some time between those two dates. A similar inquiry must be made on the question of the window panes in the west wall and the heater under the bench, although as previously noted, application of the discovery rule may not be necessary to preserve those claims.

In sum, we cannot decide as a matter of law that appellant knew or should have known of the alleged defects for more than three years at the time the complaint was filed, which would thereby make his claims untimely. This is a question to be decided by the trier of fact. *See Burns v. Bell, supra*, 409 A.2d at 618; *Byers v. Burleson, supra*, 230 U.S.App.D.C. at 67, 713 F.2d at 861; *Dawson v. Eli Lilly & Co., supra*, 543 F.Supp. at 1339.

Accordingly, the two orders entered by the trial court granting summary judgment in favor of appellees are vacated, and the case is remanded for resolution of factual matters.

*Vacated and remanded.*