HELEN E. KINSEY, Plaintiff-Appellee, *v.* WILLIAM E. SCOTT, Defendant-Appellant.

Second District No. 83—527

Opinion filed May 22, 1984.

Kenneth J. Glick, of Ray & Glick, Ltd., of Libertyville, for appellant.

Ronald E. Griesheimer, of Griesheimer & Thompson, of Waukegan, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The defendant, William E. Scott, appeals from a judgment in a bench trial awarding the plaintiff, Helen E. Kinsey, $11,800 in damages based upon defendant's fraudulent misrepresentations in the sale of an apartment building to plaintiff. On appeal, the defendant raises four contentions of error: (1) that the evidence was insufficient to prove fraudulent misrepresentation; (2) that the five-year statute of

limitations (Ill. Rev. Stat. 1981, ch. 110, par. 13—205) barred the plaintiff's cause of action; (3) that the trial court erred by failing to strike the testimony of the plaintiff's real estate appraiser; and (4) that the court below erred in determining the amount of damages by failing to consider and deduct from the award of damages the rent the plaintiff received from a basement apartment.

The plaintiff filed a two-count complaint alleging that the parties entered into a written contract in 1973 for the purchase of a five-unit apartment building owned and built by defendant; that the building was originally constructed as a four-unit apartment building and subsequently modified by defendant to add a fifth unit without a building permit; that defendant represented that he owned a validly constructed five-unit apartment building and had no notice of any dwelling code violations, and suggested the actual rentals of all five units to induce plaintiff to enter the agreement; that plaintiff relied on these representations in signing the contract; and that plaintiff learned in 1981 that the fifth unit was constructed in violation of city ordinances. It appears that count I is based upon breach of contract for misrepresentations, and count II is based upon fraudulent misrepresentation and deceit.

At a bench trial the following evidence was adduced. On July 24, 1973, the plaintiff entered into an installment real estate contract with the defendant and his wife whereby the plaintiff agreed to purchase over a 20-year period an apartment building located at 924 Linden Street in Waukegan, Illinois. Originally, the property was a vacant lot, which the defendant purchased in 1968 with the intent to construct an apartment building on it. At the time he purchased the vacant lot, the defendant was aware that the property was zoned residential and would have to be rezoned in order to allow him to construct an apartment building on it. Therefore, he retained an attorney who prepared a formal application for rezoning in which it was represented to the city of Waukegan (city) that the defendant intended to construct a four-unit apartment building. After he canvassed his neighbors to receive approval of the immediate neighborhood to build a four-unit apartment building, the defendant took part with his attorney in formal hearings before the city concerning his application for rezoning to allow him to build a four-unit apartment building. The city rezoned the property and issued the defendant a building permit for the construction of four units. Defendant's contractor then built the four-unit structure, into which the defendant moved in September 1968.

Approximately two months after occupying the building, the

defendant himself, with the help of a nephew, began to make capital improvements in the basement without first having obtained a building permit. He continued making improvements in the basement, without obtaining any building permit, until November 1970, by which time he had created a fifth apartment in the basement. He rented the basement apartment for the first time the same month.

Before renting the apartment, however, the defendant testified that he contacted his neighbor, Abe Cohen, a building inspector for the city of Waukegan, about whether he needed a building permit. Cohen advised the defendant that he should have had a building permit, that it was too late to get one at that time, and that there was not much sense in getting one. However, Cohen did not actually tell the defendant that he "had a violation." Defendant said Cohen also informed him that, in order to permit someone to live in the basement apartment, the defendant would have to construct a second escape door going up through one of the other apartments from the basement. Cohen did not inform the defendant that he needed a building permit to construct the exit door. The defendant constructed this exit without applying for or obtaining a building permit.

In March 1973, the defendant listed the property for sale with Best Realty. He gave the representative of the real estate company specific information to use in the listing agreement, which indicated that the apartment building contained five rental units and specified the monthly rent charged for each apartment. The plaintiff contacted Best Realty the following month, and the representative showed her the listing agreement. In April, the plaintiff visited the building in question and inspected all five apartments with the real estate salesperson, who informed the plaintiff that the income from the property was very good. The plaintiff also inspected the building a second time the following month.

On May 15, 1973, the plaintiff met with the defendant and his wife and the real estate agent. The defendant showed the plaintiff the income from all the apartments and also discussed the attendant expenses. According to the plaintiff, the defendant informed her that the building was very nice, that he built it himself, that she would not have any problems with it, and that she would have a good income. The plaintiff related that she asked the defendant whether there was anything wrong with the building, and he responded in the negative. She thought she asked the defendant whether the building complied with the city's building codes. The plaintiff admitted that she never made an inquiry of the city regarding the zoning or condition of the apartment building. She signed the offer to purchase the same day.

An agreement for deed was executed by the parties on July 24, 1973.

The defendant admitted telling the plaintiff in May 1973 that the building was a good, fairly-new structure. However, he denied that the plaintiff asked him questions regarding the zoning of the building or whether the edifice conformed to the city's building codes. He represented to the plaintiff that she would be able to rely upon the income from four units while she lived in the fifth apartment. He realized that the plaintiff would be able to afford the building only if the apartments produced sufficient rental income and that the sale might not have been consummated had she been aware she would lose rent from an apartment. In addition, the defendant did not tell the plaintiff that the work in the basement apartment was accomplished without a building permit or that the basement apartment was constructed without the city's approval. Also, he did not inform the plaintiff that Mr. Cohen had indicated that maybe he should have obtained a building permit. According to the defendant, prior to selling the building, neither the city of Waukegan nor any person notified him of any building or zoning code violations.

The plaintiff rented the basement apartment from the time she purchased the building until August 28, 1981, when the city of Waukegan "red tagged" the particular apartment, claiming it was an uninhabitable residence. The zoning administrator of Waukegan, Kernel Parique, testified that this basement apartment was prohibited by the housing and health code because the code did not allow a basement apartment for the type of basement in this apartment, only storage space or a utility room. Mr. Parique stated that it was impossible or improbable to convert this basement apartment into a habitable place in conformity with the city's codes. Additional testimony was presented that the building codes and zoning ordinances of the city of Waukegan are public records which are available to the general public; and that upon request, the city's staff will assist members of the public in interpreting or reviewing the codes and ordinances. He testified that Abe Cohen, who was now deceased, was a building department manager in charge of issuance of building permits.

From the time the city sent her the notice that she could not rent the basement apartment, the plaintiff has not rented it. This lawsuit was filed on August 9, 1982. At the time of trial, the basement apartment was still empty. Sometime after August 1981, the plaintiff listed and has attempted unsuccessfully to sell the building as a four-unit structure.

John O'Brien, a real estate appraiser, testified for plaintiff as an expert witness. O'Brien appraised the apartment building in issue in

1982. Although he did not appraise the building in 1973, he stated that, based on his knowledge of the property, he did not feel that its condition had changed materially since 1973. He described the procedures he would use to establish the value of the building as of 1973. Mr. O'Brien used a conservative gross rent multiplier for 1973, which he based on his experience as an appraiser. Using the formula, he rendered an opinion that the value of the building in 1973 as a four-unit structure was $56,000 and as a five-unit structure was $68,000. The trial court found for plaintiff on her fraudulent misrepresentation theory and awarded damages in the amount of $11,880.

As the parties have addressed only the fraudulent misrepresentation theory upon which the court below rendered judgment for plaintiff, we confine our analysis to the issue as presented to us.

Defendant first contends that plaintiff failed to prove a fraudulent misrepresentation by defendant. In this regard, defendant maintains there was no misrepresentation. He contends that his statement that the building was a five-unit apartment building was accurate, and that he never directly misrepresented the basement apartment was in compliance with the building code nor can such misrepresentation be implied. Also, defendant contends that even if there was a misrepresentation, there was no reliance on the misrepresentation since plaintiff inspected the building and could have checked with the city authorities to determine if there were any code violations. Defendant further contends that plaintiff failed to prove an intent to deceive. Finally, defendant argues that if there was an implied misrepresentation as to the lawfulness of the basement apartment, it was one of law, not of fact, which plaintiff cannot justifiably rely on, particularly where plaintiff had an equal opportunity to inform herself of the building ordinances.

The parties agree that the elements of a cause of action for fraudulent misrepresentation are: (1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599; *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 48, 390 N.E.2d 393.) Furthermore, the reliance by the other party must be justified, *i.e.*, he must have had a right to rely. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599.) Whether plaintiff has proved these elements is a question of fact for the trier of fact (*Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 324, 434 N.E.2d 341), whose decision will

not be disregarded unless against the manifest weight of the evidence. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410, 454 N.E.2d 723.) Generally, fraud will not be presumed and must be proved by clear and convincing evidence. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 222, 446 N.E.2d 499; *Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 324, 434 N.E.2d 341.

Plaintiff's complaint generally alleged that defendant represented to her that he owned a validly constructed five-unit apartment building and that he had no notice from any governmental authority of any dwelling code violations. Further, she alleged that by these representations the defendant misled and fraudulently deceived her into entering into the agreement to purchase the apartment building. Plaintiff's evidence established that defendant represented that he was selling a five-unit apartment building. Plaintiff also testified that she asked defendant whether the building complied with the city's building code and whether there was anything wrong with the building. A negative response can be inferred from the record. Although defendant denied plaintiff asked him the question regarding whether the building conformed to the city's building code, the trial court apparently credited plaintiff's testimony. On appeal, the reviewing court must take questions of testimonial credibility as resolved in favor of the prevailing party, and must draw from the evidence all reasonable inferences in support of the judgment. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410, 454 N.E.2d 723.) Clearly, the defendant's statements that he was selling a five-unit apartment building and that it complied with the city's building code were statements of material fact in this transaction establishing the first element upon which a charge of fraud is based.

■ Defendant contends, however, that there were no misrepresentations because the building did in fact contain five units and there was no direct misrepresentation by him regarding the basement apartment being in compliance with the building code. We disagree. As the trial court concluded, defendant represented the building was a five-unit building, which plaintiff relied on, when in fact it was not lawfully a five-unit building. This was a misrepresentation. Defendant's statement under the circumstances also certainly implied that the five apartment units contained in the building were authorized under the city's building code. In addition, as plaintiff testified, defendant represented that the building conformed to the building code. This is a misrepresentation, since it did not conform. The fact that plaintiff did not inquire specifically whether the basement apartment itself was

in compliance with the building code is not required under the facts here.

■ We next consider whether the defendant made the misrepresentations knowing or believing them to be false with the intent to induce plaintiff to act. The intent to deceive may be proved by means of circumstantial evidence (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 50-51, 390 N.E.2d 393), and whatever circumstances, when proven, convince the mind that the fraud charged has been perpetrated, is all that is required. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410, 454 N.E.2d 723.) In the case at bar, the trial court specifically found defendant knew the building was in violation of the building code and failed to disclose this to the plaintiff. The trial court's findings of fact in this regard will not be disregarded unless they are against the manifest weight of the evidence. 118 Ill. App. 3d 401, 410, 454 N.E.2d 723.

■ Here, defendant admitted he constructed the basement apartment without obtaining a building permit and originally had to obtain a building permit for construction of the four-unit apartment building. He also testified that prior to entering into the agreement to sell to plaintiff in 1973, he learned from a neighbor, whom he knew to be a building inspector for the city, that he should have had a building permit prior to construction of the basement apartment. None of this information was conveyed to the plaintiff. Having represented to plaintiff that he was selling a five-unit apartment building, his concealment of the actual facts surrounding the construction of the basement apartment shows an intention to deceive, and under the circumstances creates a duty to speak. (See *Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 604, 453 N.E.2d 932; *Allensworth v. Ben Franklin Savings & Loan Association* (1979), 71 Ill. App. 3d 1041, 1044, 389 N.E.2d 684.) There is ample evidence to support the trial court's findings of false statements made with an intent to deceive on the part of defendant in this transaction.

■ Next, defendant maintains that plaintiff failed to prove that she was justified in relying on any misrepresentations. He contends that plaintiff inspected the building prior to signing the offer to purchase and had the opportunity to check with the city officials and examine the ordinances to find out whether the building was in compliance with the building code. The question is whether, under all the circumstances, plaintiff had a right to rely on the false representations. This question is to be answered while viewing the representations in light of all the facts of which plaintiff had actual knowledge

as well as those of which she might have availed herself by the exercise of ordinary prudence. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286-87, 402 N.E.2d 599.

Here, plaintiff was not shown to be experienced in real estate transactions or with the city housing and building codes. There was no reason for her to suspect upon inspection of the building that the basement apartment was not validly constructed. Defendant represented he was selling a five-unit apartment building and concealed the fact that the basement apartment was constructed without a building permit from the city. In short, there is nothing in the record to indicate that plaintiff herself might have discovered by the exercise of ordinary prudence that the basement apartment was not constructed according to the housing and building code. Even the real estate agent, a person more experienced in these matters was unaware that the basement apartment was not in conformance with the code requirements.

Nor do we believe that plaintiff was required under the circumstances here to make an investigation on her own to determine if a building permit had been issued for the construction of the basement apartment or whether that apartment was in violation of the city code. As stated in *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 409-10, 454 N.E.2d 723, quoting from Prosser, Torts sec. 108, at 718 (4th ed. 1971), "[i]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." There is no basis in this record for plaintiff to suspect she was being deceived to require any further investigation by her. Defendant not only represented he was selling a five-unit apartment building, but also further stated the fact that he had been renting out four of the units and living in one unit, and plaintiff would receive sufficient income from rental of the four units, while she occupied the fifth unit, to meet her expenses. We find there is sufficient evidence to show justifiable reliance by plaintiff on the statements of the defendant.

Defendant also contends that a misstatement representing a question of law cannot form the basis for an action of fraud. Generally, it has been stated that one is not entitled to rely upon a misrepresentation of law as both parties are presumed to be equally capable of knowing and interpreting the law. (*Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 1135, 404 N.E.2d 1026.) However, here the misrep-

resentation most relevant was one of fact. The defendant represented the building as a five-unit apartment building when he knew that he had received a building permit to construct only a four-unit apartment building. Thus, defendant did not make a misstatement representing a question of law but rather was vouching for the proper construction of all five units in his position as builder and owner. Plaintiff also testified that she asked defendant whether the building complied with the "city's building codes." Although defendant denied being asked this question, we can infer from the record that he responded negatively and this answer was a factual one. We do not find as factually apposite the cases cited to us by defendant of *Yuden v. Binkowski* (1971), 1 Ill. App. 3d 730, 274 N.E.2d 671 (abstract of opinion), and *Scott v. Wilson* (1957), 15 Ill. App. 2d 456, 146 N.E.2d 397 (abstract of opinion). In any event, the primary misrepresentation was that the building was a five-unit apartment building and, under the actual facts as known to defendant as discussed above, this was factually untrue and made with the intent to deceive.

■■ Defendant has not argued in his appellate brief that plaintiff's proofs failed to satisfy the remaining two elements of the cause of action for fraudulent misrepresentation, *i.e.*, damage resulting from such reliance and action by plaintiff in reliance on the truth of the statement. Thus we may forego analysis except to state that a review of the record satisfies us that these elements have likewise been proved.

■■ Defendant next contends that as the misrepresentations were made in May 1973, and the action filed in August 1982, the cause of action was barred by the applicable five-year statute of limitations. Our supreme court has held that section 15 of the Limitations Act (Ill. Rev. Stat. 1981 ch. 83, par. 16) now recodified as section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—205), which provides, *inter alia*, that "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued," is applicable to actions for fraud and tortious misrepresentation. (*Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 560, 402 N.E.2d 181.) Although this action was not commenced within five years of the May 15, 1973, misrepresentations, the "discovery rule" relating to the statute of limitations has been held to apply to fraud and tortious misrepresentation. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 414-17, 430 N.E.2d 976.) The effect of the discovery rule is to postpone the starting of the period of limitations until the injured party knows or should have known of his injury. (88 Ill. 2d 407, 414-16, 430 N.E.2d 976.) We believe the

evidence establishes that plaintiff never knew nor should she have known of her injury until informed by the city on August 28, 1981, that the basement apartment was prohibited by the housing code. As suit was filed on August 9, 1982, the plaintiff acted within the appropriate time limit as extended by the discovery rule. Defendant has mistakenly argued that section 13—215 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—215) dealing with fraudulent concealment of a cause of action is the applicable provision which controls the postponing of the limitations period here. The discovery rule, as judicially created, is separate from the statutory provision of section 13—215, which covers fraudulent concealment of a cause of action. See *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 374 N.E.2d 670, *aff'd in part, rev'd in part* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.

The third issue which the defendant raises on appeal is whether the trial court erred in failing to strike the testimony of the plaintiff's real estate appraiser. The defendant asserts that, in light of the fact that the witness only appraised the building in 1982, his testimony at trial regarding the value of the building as it existed in 1973 was based on conjecture or a guess.

■■■ An expert witness may not base his opinion upon conjecture, speculation, or a guess. (*Nelson v. Speed Fastener, Inc.* (1981), 101 Ill. App. 3d 539, 543, 428 N.E.2d 495; *Sommers v. American Economy Insurance Co.* (1972), 8 Ill. App. 3d 450, 452, 289 N.E.2d 712.) In the case at bar, John O'Brien appraised the apartment building in 1982. Although he did not appraise the building in 1973, he stated that, based on his knowledge of the property, he did not feel that its condition had changed materially since 1973. He described in detail the procedures he would use to establish the value of the building in 1973. Using a conservative gross rent multiplier, which he based on his long experience as an appraiser, he rendered an opinion that the value of the building in 1973 as a four-unit structure was $56,000 and as a five-unit complex was $68,000. Here, the expert's testimony was not based on mere conjecture, speculation, or guesswork. Rather, it was grounded on facts within his personal knowledge or facts which had been placed in evidence. He merely applied a gross rent multiplier to the relevant facts to establish the respective values of the apartment building in 1973. Therefore, the trial court did not err when it refused to strike O'Brien's opinion testimony.

The defendant's last contention is that the trial court erred in determining the amount of damages. In particular, he maintains that the trial court, after ascertaining the difference in the fair market value

of the property as a four-unit building and as a five-unit structure in 1973, should have deducted from that amount ($11,880) the total rent income the plaintiff received from the basement apartment from July 1973 to August 1981.

▮▮▮ ▮ In Illinois, a purchaser of property who has been defrauded is entitled to damages which will give her the benefit of her bargain. Accordingly, the proper measure of damages in cases of fraudulent misrepresentation or concealment is the value the property would have had at the time of the sale if the defects did not exist, minus the value the property actually had at the time of the sale due to the defects. (*N.C.Antle & Brothers v. Sexton* (1891), 137 Ill. 410, 416, 27 N.E. 691; *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 644-45, 395 N.E.2d 133.) This assessment of damages should focus on the loss to plaintiff. (*Martin v. Allstate Insurance Co.* (1981), 92 Ill. App. 3d 829, 835, 416 N.E.2d 347.) In the present case, the plaintiff bargained for a five-unit apartment building so that she could derive rental income from four of those apartments, including the basement unit. The trial court determined, based on the opinion testimony of the plaintiff's expert, that the difference in value between the building as a five-unit structure and as a four-unit structure in 1973 was $11,880. Clearly, the plaintiff was entitled to that amount of damages. In addition, the rental income which the plaintiff received from the basement apartment from 1973 to 1981 also belongs to her as owner of the building. *Fairfield Savings & Loan Association v. Kroll* (1969), 106 Ill. App. 2d 296, 246 N.E.2d 327, cited by defendant, is clearly inapposite to the facts here and need not be discussed.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.