# Illinois Official Reports

## Appellate Court

*Kupper v. Powers*, 2017 IL App (3d) 160141

| | |
|---|---|
| Appellate Court Caption | ROBERT H. KUPPER II, KEVIN I. KUPPER, ALAN KUPPER, and DAVID G. KUPPER, as Beneficiaries of the Heritage Bank of Central Illinois, as Trustee Under the Provisions of a Trust Agreement Dated the 27 Day of January, 2006, Known as Trust No. 20-101, Plaintiffs and Counterdefendants-Appellees, v. ROBERT L. POWERS, Defendant and Counterplaintiff-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0141 |
| Filed | January 30, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 14-LM-106; the Hon. Katherine S. Gorman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gary L. Morris, of Peoria, for appellant.<br><br>Emily H. Wilburn, of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, for appellees. |

Panel JUSTICE CARTER delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justice Lytton concurred in the judgment and opinion.


**OPINION**

¶ 1 Defendant, Robert L. Powers, appeals the dismissal of his third amended countercomplaint and the trial court's order granting summary judgment in favor of plaintiffs. Specifically, defendant argues that the trial court erred in dismissing his fraudulent misrepresentation claim because the alleged false statements made by plaintiffs, Robert H. Kupper II, Kevin I. Kupper, Alan Kupper, and David G. Kupper, as beneficiaries of the Heritage Bank of Central Illinois, as trustee under the provisions of a trust agreement dated January 27, 2006, known as trust No. 20-101, were false statements of material fact. Defendant contends that the trial court erred in dismissing his negligent misrepresentation claim because plaintiffs owed a public duty to convey accurate information about the zoning of the premises. Defendant also argues that the trial court erred in dismissing with prejudice his claim that plaintiffs violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2014)), which was pled in his first amended countercomplaint. Additionally, defendant contends that the trial court erred in granting plaintiffs' motion for summary judgment because (1) the trial court lacked jurisdiction to rule on the motion and (2) there were genuine issues of material fact. We affirm.

¶ 2                                      FACTS
¶ 3 On September 29, 2006, plaintiffs and defendant signed a written "Agreement for Warranty Deed" (Agreement) under which plaintiffs agreed to sell a building located at 255 Northeast Randolph Avenue in Peoria, Illinois (the premises), to defendant for $215,000. Defendant was to make a down payment of $21,500 at the time the Agreement was signed and then monthly payments in the amount of $1300 until October 1, 2013. The entire remaining unpaid principal and interest were due on October 1, 2013. The Agreement provided, in relevant part, as follows:

> "4. REAL ESTATE TAXES. Buyer agrees to pay all real estate taxes and assessments that may be legally levied upon the Premises after the date of possession. ***
>
> 5. DEFAULT. If Buyer fails to make any payment or perform any other covenant as provided herein, at the option of Seller (in addition to any other remedies available to Seller):
>
> > A. This Agreement shall be forfeited and determined, and Buyer shall forfeit all payments made on this Agreement and such payments shall be retained by Seller in full satisfaction and in liquidation of damages sustained by Seller (except as provided at Article 18), and Seller shall have the right to re-enter and take possession of the Premises; or
> > * * *

- 2 -

6. POSSESSION. Seller agrees to give possession of the Premises to Buyer October 1, 2006.

* * *

18. ATTORNEY'S FEES; RENT. If either party should find it necessary to retain an attorney for the enforcement of any of the provisions hereunder occasioned by the fault of the other party, the party not in default shall be entitled to recover for reasonable attorney's fees and court costs incurred ***. Buyer agrees that attorney's fees, court costs, accrued real estate taxes and title costs are recoverable by Seller even though the Premises may be forfeited *** under the provisions of Article 5.

Buyer further agrees that Seller may recover from Buyer a fair and reasonable rent for the use and occupation of the Premises after the forfeiture of the agreement where Buyer has retained possession after such forfeiture ***."

¶ 4 On January 29, 2014, plaintiffs filed a two-count complaint seeking (1) possession of the premises under the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2014)) and (2) rent for the use and occupation of the premises after forfeiture of the Agreement. The complaint alleged that defendant defaulted on the Agreement by failing to make the final payment and pay all real estate taxes and assessments. The complaint alleged that defendant was unlawfully withholding possession of the premises from plaintiffs. Plaintiffs attached the Agreement and a demand notice plaintiffs had mailed to defendant on December 20, 2013.[1]

¶ 5 Defendant answered the complaint. Defendant admitted that he failed to make the final payment and pay the 2012 real estate taxes, but he otherwise denied defaulting on the Agreement.

¶ 6 Defendant filed a countercomplaint alleging that, prior to the entry of the Agreement, the plaintiffs fraudulently represented that the property was zoned for 13 dwelling units when it was only zoned for 9 units. Plaintiffs answered the countercomplaint and filed a motion to dismiss. The trial court dismissed the countercomplaint without prejudice.

¶ 7 Defendant filed an amended countercomplaint alleging (1) fraudulent misrepresentation of zoning density, (2) violation of the Consumer Fraud Act, and (3) violation of the Dwelling Unit Installment Contract Act (765 ILCS 75/0.01 *et seq.* (West 2014)). Regarding the Consumer Fraud Act claim, the amended countercomplaint argued that the plaintiffs gave deceptive and misleading information regarding the zoning of the premises. Specifically, defendant referenced a Craigslist advertisement, past income tax returns of the owners of the property, and an appraisal of the property stating that it was a 13-unit building. Defendant also alleged that Robert Kupper asserted "that for three generations he was aware of the past legal zoning history usage of the structures."

¶ 8 Plaintiffs filed a motion to dismiss the amended countercomplaint. On March 4, 2015, the trial court dismissed the fraudulent misrepresentation claim without prejudice. The trial court dismissed the remaining counts with prejudice.

¶ 9 On April 1, 2015, defendant filed a second amended countercomplaint alleging negligent misrepresentation. On April 6, 2015, defendant filed a motion to reconsider the dismissal of

---

[1]The signatures of defendant, Robert H. Kupper II, Kevin I. Kupper, and David G. Kupper appear on the copy of the Agreement attached to the complaint. Alan Kupper's signature does not appear on the Agreement.

the Consumer Fraud Act count of the first amended countercomplaint. Plaintiffs filed a motion to dismiss. The trial court dismissed the second amended countercomplaint without prejudice and denied the motion to reconsider.

¶ 10 Defendant filed a third amended countercomplaint alleging (1) fraudulent misrepresentation of zoning density and (2) negligent misrepresentation. Regarding the fraudulent misrepresentation claim, the complaint alleged:

"The zoning ordinance for the City of Peoria allowed a maximum density legal conforming usage of three (3) dwelling units on [the premises] in 2006 but since the property was built in 1891, a higher non-conforming use is allowed if the zoning applicant can prove more dwelling units existed prior [to] the passage of the City of Peoria zoning laws in 1931."

¶ 11 The third amended countercomplaint alleged that defendant relied on statements in the plaintiffs' Craigslist advertisement, income tax documents, and property appraisal indicating that the premises contained 13 dwelling units. Defendant attached the Craigslist advertisement, income tax documents, and appraisal to his third amended countercomplaint. Defendant alleged that these documents "impliedly warranted that the thirteen (13) unit property was subject to and in compliance with City of Peoria zoning Laws when in fact it was not." The third amended countercomplaint also alleged that plaintiffs' "ancestral family had ownership of [the premises] since 1942." Additionally, Robert Kupper gave defendant "a tour of said premises through thirteen (13) dwelling units stating he was aware of the past zoning history through his family of the property and that the units were legal and extolled their income potential for the future."

¶ 12 Upon motion of plaintiffs, the trial court dismissed the third amended countercomplaint with prejudice. The written order stated:

"1. Count I [alleging fraudulent misrepresentation] is dismissed with prejudice as the statements as to the zoning were statements of law, not of fact, and other reasons of record.

2. Count II [alleging negligent misrepresentation] is dismissed with prejudice as the Counter Defendants had no public duty and other reasons of record."[2]

¶ 13 On October 15, 2015, plaintiffs filed a motion for summary judgment. The motion alleged that it was undisputed that defendant breached the Agreement by failing to make the final payment and failing to pay the real estate taxes for 2011 through 2014. Plaintiffs were required to redeem the real estate taxes for 2011 through 2013 and pay the 2014 taxes. The motion also alleged that defendant failed to make at least six of his monthly payments of $1300 under the Agreement, which were due prior to the balloon payment.

¶ 14 Plaintiffs attached an affidavit executed by Robert Kupper stating, *inter alia*, that (1) defendant failed to maintain insurance on the premises, (2) defendant failed to pay property taxes for 2011 through 2014, and (3) plaintiffs redeemed the property taxes for 2011 through 2013 and paid the 2014 property taxes. Plaintiffs attached a redemption receipt from the Peoria County clerk's office showing that plaintiffs redeemed the 2011 through 2013 real

---

[2]It is unclear on this record whether a hearing was held on the motion to dismiss the third amended countercomplaint. No transcript was filed in the report of proceedings on appeal.

estate taxes for the premises in the amount of $15,114.51. Plaintiffs also attached a real estate tax statement from 2014, showing the total real estate taxes on the premises to be $4099.14.

¶ 15 On October 16, 2015, defendant filed a notice of appeal of the order dismissing his third amended countercomplaint with prejudice.

¶ 16 On November 9, 2015, defendant filed a response to plaintiffs' motion for summary judgment. In the response, defendant denied that he failed to make monthly payments under the Agreement. Defendant also "denie[d] that he failed to make the required balloon payment on October 1, 2013, since the balloon payment which was due at the closing was never obtained, since the Plaintiffs[ ] failed to hold a closing." Defendant denied that he failed to pay the real estate taxes for 2011 but admitted that he did not pay the taxes in 2012, 2013, or 2014. Defendant also denied that he was required to pay rent under the Agreement for the months after forfeiture during which he retained possession of the premises.

¶ 17 A hearing on the motion for summary judgment was held on November 20, 2015. The trial court found that it lacked jurisdiction to rule on the motion for summary judgment due to the notice of appeal filed by defendant on October 16.

¶ 18 On December 15, 2015, we issued an order dismissing the October 16 appeal for lack of jurisdiction. Specifically, we noted that there was no express written finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). *Kupper v. Powers*, No. 3-15-0726 (Dec. 15, 2015) (unpublished dispositional order under Rule 23(c)). The mandate issued on February 4, 2016.

¶ 19 On February 19, 2016, a hearing was held on plaintiffs' motion for summary judgment. Plaintiffs' counsel argued that its motion for summary judgment and supporting documentation showed that defendant defaulted on the Agreement by failing to pay six of the monthly payments before the balloon payment came due; pay the balloon payment, which was due on October 1, 2013; pay the real estate taxes for 2011 through 2014; and maintain insurance on the premises. Plaintiffs' counsel requested damages in the amount of $116,584.80 for the six unpaid monthly payments, rent after forfeiture, real estate taxes from 2011 through 2014, and attorney fees. Defense counsel then stated: "In response, everything [plaintiffs' counsel] said is true. She just left out a lot of facts." Defense counsel argued that plaintiffs violated the contract by failing to obtain a zoning certificate for 13 dwelling units, and as a result, defendant was unable to obtain financing to make the final balloon payment. Defense counsel acknowledged that defendant failed to pay the real estate taxes on the premises.

¶ 20 The trial court granted plaintiffs' motion for summary judgment, finding that there was no genuine issue of material fact that defendant breached the Agreement.[3] The court reasoned:

> "Well, from where I sit right here, right now, there's no dispute that there was an agreement. There's no dispute that payments were not made before the balloon payment came due. There's no dispute that insurance was not maintained on the

---

[3]When the trial court granted the motion for summary judgment, it also ordered that defendant could take an interlocutory appeal regarding the dismissal of his countercomplaint under Rule 304(a) in response to a motion seeking a Rule 304(a) finding that defendant had previously filed. The trial court's Rule 304(a) finding was unnecessary, however, because the order granting summary judgment was a final, appealable order.

property. There's no dispute that real estate taxes were not paid. All of those things breach the agreement, entitling the plaintiff to the relief sought. And there's nothing to refute the damages as pled, so I will award those."

## ANALYSIS

### I. Counterclaim

Defendant argues that the trial court erred in dismissing his third amended countercomplaint. Defendant also contends that the trial court erred in dismissing with prejudice his claim under the Consumer Fraud Act, which was alleged in the first amended countercomplaint.

### A. Third Amended Countercomplaint

Defendant's third amended countercomplaint alleged claims of fraudulent misrepresentation and negligent misrepresentation. Plaintiffs moved to dismiss the third amended countercomplaint under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2014)). "A motion under section 2-619.1 allows a party to 'combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses.' " *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 15 (quoting *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003)). We review *de novo* the dismissal of a complaint under section 2-619.1. *Id.*

### 1. Fraudulent Misrepresentation of Zoning Density

Defendant argues that the trial court erred in dismissing his claim for fraudulent misrepresentation of zoning density because the alleged statements of plaintiffs regarding the zoning of the premises were statements of material fact, not statements of law. We find that the trial court did not err in dismissing defendant's fraudulent misrepresentation claim because, based on the allegations in the third amended countercomplaint, defendant could have discovered the premises' zoning nonconformity through the exercise of ordinary prudence by merely reviewing the ordinance.

> "The elements of a cause of action for fraudulent misrepresentation are: (1) false statement of a material fact; (2) known to be false by the party making it; (3) an intent to induce the other party to act; (4) action by the other party in reasonable reliance on the statement; and (5) damage to the other party resulting from such reliance." *Stichauf v. Cermak Road Realty*, 236 Ill. App. 3d 557, 567 (1992).

In order to sustain a claim of fraudulent misrepresentation, one must allege a *false statement of material fact* rather than a *false statement of law*. "[A]s a general rule, one is not entitled to rely upon a representation of law because both parties are presumed to be equally capable of knowing and interpreting the law." *Id.* In determining whether a misrepresentation is one of fact or law, "the analytical focus *** has evolved beyond a strict fact versus law dichotomy." *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 807 (1993).

> "[T]he key question is whether a defendant's misrepresentations or omissions were discoverable through the exercise of ordinary prudence by the plaintiff, and a finding of liability is made when the defendant misrepresents or omits facts of which he

possesses almost exclusive knowledge the truth or falsity of which is not readily ascertainable by the plaintiff." *Id.*

¶ 29    The parties cite several cases that reach various conclusions regarding whether statements of zoning or building code violations were statements of law or statements of fact. Plaintiffs cite *Stichauf*, 236 Ill. App. 3d 557, and *City of Aurora v. Green*, 126 Ill. App. 3d 684 (1984), in support of their argument that the trial court properly found that statements regarding zoning were statements of law rather than statements of fact.

¶ 30    In *Stichauf*, the plaintiff purchased two buildings located on a single lot in violation of a zoning ordinance, which allowed only one building per lot. *Stichauf*, 236 Ill. App. 3d at 559-60. The plaintiff filed a fraudulent misrepresentation lawsuit against the sellers of the building and their real estate agency based on statements made by the agency that both buildings could be legally used and were in compliance with the zoning ordinance. *Id.* at 567. The court held that the defendants did not make false statements of material fact sufficient to support a claim of fraudulent misrepresentation. *Id.* at 568. The court reasoned that the zoning ordinance "clearly and unequivocally state[d] that no more than one principal detached building shall be located on a lot" and it was "readily apparent" that there were two buildings on the lot. *Id.* The court further reasoned that "[e]ven a cursory review of the *** zoning ordinance would have put the plaintiff on notice that the property may have been in violation of the ordinance." *Id.*

¶ 31    Similarly, in *City of Aurora*, the third-party defendants converted a building that formerly had commercial space on the first floor and two residential units on the second floor into five residential units in violation of a city zoning ordinance that allowed for only two-family residences. *City of Aurora*, 126 Ill. App. 3d at 685. The third-party defendants sold the building to the third-party plaintiffs and represented that it was properly zoned for five residential units. *Id.* The court held that the third-party defendants' statements regarding zoning were statements of law such that the third-party plaintiffs could not reasonably rely on them. *Id.* at 689. In reaching its holding, the court rejected the third-party plaintiffs' argument that if they had called the city regarding the zoning of the building, they would have only been told that the building was in a two-family dwelling district and not whether the nonconforming use could have been continued. *Id.* at 688. The court reasoned:

> "The zoning map and the information available at the city hall would have revealed that the property was located in an R-4 district and would have shown that the five-unit apartment building was not a permitted use in an R-4 district. This information would have alerted the [plaintiffs] to further inquiry and it is no defense to argue as they do that they would have no access to information that the conversion was made without the permission of the city. The relevant point is that the inquiry would have alerted them to the fact that the use was apparently not permitted and at least that they should inquire further." *Id.* at 688-89.

¶ 32    We now turn to the cases cited by defendant in support of his argument that the plaintiffs made false statements of material fact rather than statements of law. Defendant cites *Kinsey v. Scott*, 124 Ill. App. 3d 329, 339 (1984), *Perkins v. Collette*, 179 Ill. App. 3d 852, 859 (1989), and *Tan v. Boyke*, 156 Ill. App. 3d 49, 52 (1987). In *Kinsey*, the defendant represented that a building he constructed was a five-unit building when he knew that he had received a building permit to construct only a four-unit building. *Kinsey*, 124 Ill. App. 3d at 339. The court held that this was a misrepresentation of fact rather than law where the

- 7 -

defendant knew that this was factually untrue and was "vouching for the proper construction of all five units in his position as builder and owner." *Id.* The *Kinsey* court reasoned that "there [was] nothing in the record to indicate that plaintiff herself might have discovered by the exercise of ordinary prudence that the basement apartment was not constructed according to the housing and building code." *Id.* at 338.

¶ 33    In *Tan*, 156 Ill. App. 3d at 52, the defendant sold two apartment buildings on two lots containing a total of 66 units to the plaintiff. The defendant did not tell the plaintiff prior to the sale that when he obtained the building permits for the two buildings, he included the south 60 feet of one of the lots on both applications. *Id.* As a result, the buildings contained a greater density of housing and less parking spaces than zoning ordinances permitted. *Id.* The *Tan* court held that the defendant had a duty to disclose the discrepancies on the building permits when he represented to the plaintiff that all 66 units could be used. *Id.* at 54. The court rejected the defendant's argument that he made no misrepresentation of fact to the plaintiff because the plaintiff had an opportunity to review the applicable zoning requirements. *Id.* at 55. The court reasoned:

> "[T]he plaintiff produced uncontroverted evidence that the only way [the] discrepancies [in the building permits] could have been discovered was *** by obtaining and reviewing the plat of survey with an accurate square-footage figure and calculating the buildings' unit densities as well as those permitted by the applicable ordinances. The facts were clearly not readily discernible by a simple review of the ordinances ***. Yet they were well known to the defendant." *Id.* at 57.

¶ 34    Similarly, in *Perkins*, the plaintiffs alleged that the defendant, a real estate agent, told them that a lot they had purchased was a suitable location for a home when the defendant himself had been denied a building permit for the lot. *Perkins*, 179 Ill. App. 3d at 859. The *Perkins* court rejected the defendant's argument that the alleged misrepresentations mentioned in the complaint were misrepresentations of law rather than fact. *Id.* In doing so, the *Perkins* court distinguished *City of Aurora* (as well as other cases that reached similar conclusions) from *Kinsey* and *Tan*, reasoning: "The primary factor which distinguishes *** *City of Aurora* from *Kinsey* and *Tan* is whether the seller's misrepresentations could have been discovered merely by reviewing applicable zoning or building ordinances." *Id.* The *Perkins* court concluded the facts alleged in the complaint did not conclusively indicate that the plaintiffs could have discovered the defendant's misrepresentations by merely reviewing applicable building and zoning ordinances. *Id.*

¶ 35    We find that the instant case is more similar to *Stichauf* and *City of Aurora* than *Kinsey*, *Tan*, and *Perkins*. In *Kinsey* and *Tan*, the courts found that the plaintiffs could not have discovered that the real estate they purchased was not in compliance with building and zoning codes by merely looking up the applicable ordinances. *Kinsey*, 124 Ill. App. 3d at 339; *Tan*, 156 Ill. App. 3d at 54. Similarly, in *Perkins*, the court found that the facts alleged in the complaint did not show that the plaintiffs could have discovered the defendant's false statement by merely reviewing the applicable ordinances. *Perkins*, 179 Ill. App. 3d at 859. In this case, on the other hand, defendant alleged in his third amended countercomplaint that when the Agreement was signed in 2006, "[t]he zoning ordinance for the City of Peoria allowed a maximum density legal conforming usage of three (3) dwelling units on [the premises]." Like in *Stichauf* and *City of Aurora*, the ordinance should have alerted defendant

that the premises, which contained 13 units, may not be in conformity with the city's zoning laws.

¶ 36      We reject defendant's argument that merely reviewing the zoning ordinance would not have informed him whether the city would permit the building to contain units in excess of what the ordinance allowed as a legal nonconforming use due to the building's age and past use. We note that a similar argument was rejected by the court in *City of Aurora*. See *City of Aurora*, 126 Ill. App. 3d at 688. Like in *City of Aurora*, a review of the ordinance "would have alerted [defendant] to the fact that the use was apparently not permitted and at least that [he] should inquire further." *Id.* at 689. Defendant was not excused from conducting further inquiry into the zoning of the premises merely because the city may have allowed more units than permitted by the zoning code as a legal nonconforming use.

¶ 37      Thus, we hold that the trial court properly found that the alleged misrepresentations regarding zoning were statements of law rather than statements of fact such that they could not sustain a claim for fraudulent misrepresentation. Accordingly, the trial court did not err in dismissing defendant's claim for fraudulent misrepresentation of zoning density with prejudice.

¶ 38                           2. Negligent Misrepresentation

¶ 39      Defendant argues that the trial court erred in dismissing his claim of negligent misrepresentation. We find that the trial court did not err in dismissing the negligent misrepresentation claim because the plaintiffs had no public duty under the Peoria zoning ordinance to provide defendant with accurate zoning information.

¶ 40      "In order to state a cause of action for negligent misrepresentation, a complaint must first allege facts establishing that the defendants owed the plaintiff a duty to communicate accurate information." *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 45. Our supreme court has recognized a duty to communicate accurate information (1) "to avoid negligently conveying false information that results in physical injury to a person or harm to property" and (2) "to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions." *Brogan v. Mitchell International, Inc.*, 181 Ill. 2d 178, 183-84 (1998). "[N]egligent misrepresentation actions are almost universally limited to situations involving a defendant who, in the course of his business or profession, supplies information for the guidance of others in their business relations with third parties." *Hoover*, 2012 IL App (1st) 110939, ¶ 45.

¶ 41      In *Lehmann v. Arnold*, 137 Ill. App. 3d 412, 420-21 (1985), the court held that a negligent misrepresentation action could also be sustained against a party under a public duty to provide information. In *Lehmann*, the plaintiffs sued the developers of the subdivision where the plaintiffs' house was located. *Id.* at 413. The plaintiffs alleged that the defendants filed a plat of the subdivision without first having it approved by the Illinois Department of Transportation for a flood hazard determination, which was required by statute. *Id.* at 418. The court held that the statute created a duty for the defendants to provide accurate information such that the plaintiffs could maintain an action for negligent misrepresentation based on that duty. *Id.* at 421. The court reasoned: "Our conclusion is consistent with other authorities that hold statutes requiring information to be filed for public record, particularly

those which require it to be published after filing, create a duty to members of the public for whose benefit the statute was created." *Id.* at 419.

¶ 42    In the instant case, defendant contends that the Peoria zoning ordinance created a public duty for the plaintiffs to have possessed a nonconforming use zoning certificate at the time the Agreement was signed. Specifically, defendant argues:

"Since the City of Peoria requires that all sales of property require a zoning certificate stating whether there is a non-conforming use for the benefit of the public and buyer and to resolve zoning disputes, there is a duty to the buyer under the law in the City of Peoria that the seller be truthful and accurate to the buyer as to a properties [*sic*] lawful use."

¶ 43    In support of his argument, defendant points to various provisions in the Peoria Zoning Ordinance.[4] Section 2.9 of the ordinance provides for the issuance of zoning compliance certificates or zoning exception certificates to certify the zoning status of property. Peoria Ordinance Code, app. B, § 2.9(a) (amended Aug. 23, 2011). Section 2.9(c)(1) of the zoning ordinance states:

"No instrument which immediately conveys or provides for the future conveyance of the fee interest in any property within the City of Peoria including an Agreement for Warranty Deed shall be recorded *** until a Zoning Certificate has been issued for the property which is to be conveyed ***." *Id.* § 2.9(c)(1).

¶ 44    The ordinance provides for the issuance of either zoning compliance certificates, which certify that property is in compliance with the ordinance, or zoning exception certificates. *Id.* § 2.9(a). The ordinance states that "[t]he purpose of a Zoning Exception Certificate is to provide notice and procedures to resolve disputes as to whether specific premises which do not conform to this code may be maintained because they are *** [l]egal nonconforming uses ***." *Id.* § 2.9(a)(1). The ordinance also provides that "[t]he Zoning Administrator shall keep copies of all Zoning Exception Certificates issued and may maintain a map of the City designating the locations of all zoning lots for which such certificates have been issued." *Id.* § 2.9(b)(3).

¶ 45    Unlike the statute in *Lehmann* requiring the defendants to file an accurate plat, the above provisions of the ordinance do not create a duty for plaintiffs to file any information regarding the zoning of the premises for the benefit of the public or to accurately represent the zoning status of the premises to prospective buyers. Rather, the ordinance required plaintiffs to obtain a zoning certificate before conveying property. Because the ordinance did not require that any information be filed for the benefit of the public, we find that the ordinance did not create a public duty. Accordingly, the trial court did not err in dismissing the negligent misrepresentation count from the third amended countercomplaint.

---

[4]Defendant does not indicate the year of the version of the Peoria Zoning Ordinance he cites in his brief. It is the duty of the appellant to cite the authorities relied upon in support of his argument. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). In this opinion, we cite the version of the ordinance effective April 30, 2012, as it is identical to the excerpts cited by defendant and is the oldest version of the ordinance available on the City of Peoria's website. See Peoria Zoning Ordinance (Apr. 30, 2012), https://www.municode.com/library/il/peoria/codes/code_of_ordinances/179607?nodeId=CO_APXBZOOR.

¶ 46    In reaching our holding, we make no decision as to whether plaintiffs actually complied with the zoning ordinance. Rather, we merely hold that the ordinance did not create a public duty upon which defendant may base a negligent misrepresentation action.

¶ 47                    B. First Amended Countercomplaint—Consumer Fraud Act Violation

¶ 48    Defendant argues that the trial court erred in dismissing with prejudice the count of his first amended countercomplaint alleging a violation of the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2014)). We find that defendant has forfeited review of this claim.

¶ 49    It is a "well-established principle that a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153 (1983). " 'Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " *Id.* at 154 (quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963)).

¶ 50    In order to avoid forfeiture under the above rule when a trial court dismisses with prejudice fewer than all the counts in a complaint, a plaintiff may (1) "stand on the dismissed counts and argue the matter at the appellate level," (2) "file an amended complaint realleging, incorporating by reference, or referring to the claims set forth in the prior complaint," or (3) "perfect an appeal from the order dismissing fewer than all of the counts of his or her complaint *prior to* filing an amended pleading that does not include reference to the dismissed counts." (Emphasis added.) *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 719 (2010); see also *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 30. If a plaintiff does not exercise any of these options "and files a subsequent complaint that does not reallege or preserve the dismissed claims, he waives his right to appeal from the trial court's order dismissing those counts of his prior complaint." *Tunca*, 2012 IL App (1st) 093384, ¶ 30.

¶ 51    Here, defendant filed a second amended countercomplaint that failed to reallege or incorporate by reference the Consumer Fraud Act claim *before* he filed a motion to reconsider or sought appellate review of the dismissal of his Consumer Fraud Act claim. Consequently, by filing the second amended countercomplaint, defendant forfeited any objection to the dismissal with prejudice of the Consumer Fraud Act violation alleged in his first amended countercomplaint. See *Foxcroft*, 96 Ill. 2d at 153.

¶ 52    Even if we were to excuse defendant's forfeiture of his Consumer Fraud Act claim, the claim would fail on its merits.
            "The elements of a claim under the Consumer Fraud Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade and commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 933 (2003).

¶ 53    As we have held that the alleged misrepresentations regarding zoning were statements of law rather than statements of fact, defendant would not have been able to establish a deceptive act on the part of plaintiffs. See *id.* ("Generally, a deceptive representation or

omission of law does not constitute a violation of the Consumer Fraud Act because both parties are presumed to be equally capable of knowing and interpreting the law.").

¶ 54                                    II. Summary Judgment

¶ 55    Defendant contends that the trial court erred in granting summary judgment in favor of plaintiffs because (1) the trial court lacked jurisdiction to rule on the motion for summary judgment and (2) there were genuine issues of material fact. For the reasons that follow, we reject both arguments.

¶ 56    Initially, we reject defendant's argument that the trial court erred in ruling on the motion for summary judgment on February 19, 2016, because it lacked jurisdiction. Specifically, defendant contends that the trial court previously dismissed the motion for summary judgment on November 20, 2015, for lack of jurisdiction and plaintiffs never refiled the motion. However, the record shows the trial court did not dismiss the motion for summary judgment on November 20, 2015. Rather, the trial court found that it lacked jurisdiction over the proceedings at that time due to the pending appeal such that it could not yet rule on the motion for summary judgment. See *Kral v. Fredhill Press Co.*, 304 Ill. App. 3d 988, 993 (1999) ("Upon the proper filing of a notice of appeal, the jurisdiction of the appellate court attaches, and the trial court is deprived of its jurisdiction and loses the ability to modify its judgment or to rule on matters of substance that are the subject of appeal.").

¶ 57    The court had jurisdiction over the proceedings at the time the motion was filed, as it was filed prior to the notice of appeal. Jurisdiction was revested in the trial court when this court dismissed the appeal and issued its mandate on February 4, 2016. See *Longo v. Globe Auto Recycling, Inc.*, 318 Ill. App. 3d 1028, 1035 (2001) ("The appellate court's mandate is the transmittal of the judgment of the reviewing court to the circuit court and revests the trial court with jurisdiction."). Once the mandate was filed, the trial court could properly rule on the motion for summary judgment; there was no need for plaintiffs to refile the motion. See Ill. S. Ct. R. 369(b) (eff. July 1, 1982) ("When the reviewing court dismisses the appeal *** and the mandate is filed in the circuit court, enforcement of the judgment may be had and other proceedings may be conducted as if no appeal had been taken.").

¶ 58    We also reject defendant's argument that the trial court erred in granting the plaintiffs' motion for summary judgment because there were genuine issues of material fact. Specifically, defendant contends that he denied some of plaintiffs' allegations in his answer to the complaint. Additionally, defendant argues that in his response to the motion for summary judgment, he denied that (1) he defaulted under the Agreement by failing to make the required payments, (2) he must pay rent while withholding possession of the premises from the plaintiffs, and (3) he failed to make the required balloon payment because the payment never came due as a closing was never held.

¶ 59    It is uncontroverted, however, that defendant failed to pay real estate taxes on the premises from 2011 through 2014. Plaintiffs attached a redemption receipt from the office of the Peoria County clerk to its motion for summary judgment. Plaintiffs also attached an affidavit executed by Robert Kupper, stating that plaintiffs had paid the 2014 real estate taxes. Defendant admitted in his answer to the complaint and his response to the motion for summary judgment that he failed to pay the real estate taxes on the premises for 2012 through 2014. Although defendant claimed that he paid the 2011 taxes, the redemption receipt showed that he had not.

¶ 60    Under the terms of the Agreement, defendant was to pay all real estate taxes on the premises after he took possession on October 1, 2006. Defendant's failure to pay the taxes caused him to be in default of the Agreement. Under the terms of the Agreement, plaintiffs could declare forfeiture on this basis alone. Accordingly, we affirm the trial court's grant of summary judgment solely on this basis.

¶ 61                                    CONCLUSION

¶ 62    The judgment of the trial court is affirmed.

¶ 63    Affirmed.